<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF CONNECTICUT</u>

| | |
|---|---|
| **ROGER LASSEN, JR., individually and on behalf of all other similarly situated individuals** <br>        **Plaintiff** <br><br> **v.** <br><br> **HOYT LIVERY, INC., SANTO SILVESTRO and LYNDA SILVESTRO** <br>        **Defendant** | **CIVIL ACTION NO.:** <br> **3:13-cv-01529-MPS** <br><br><br><br><br> **FEBRUARY 12, 2014** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROEDURE**</u>

**I.**      <u>**INTRODUCTION**</u>

This action arises from the unlawful failure of defendants Hoyt Livery, Inc., Santo Silvestro, and Lynda Silvestro to pay their full-time limousine drivers overtime compensation as guaranteed by the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq*. and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq*.  Plaintiff, Roger Lassen, Jr., now moves for certification of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, based on Defendants' violations of the CMWA, and for the appointment of The Quinn Law Firm, LLC and The Hayber Law Firm, LLC as class counsel.

As set forth more fully below, this motion should be granted because Lassen has demonstrated that Defendants subjected the putative class of limousine drivers to the exact same unlawful compensation policy to which he was subjected – paying them a flat rate for each trip that they took, regardless of the number of hours that they worked per week.  Further, the requirements of Rule 23 are met: the class is so numerous that joinder is impracticable; there are

questions of law or fact common to the class; Lassen's claims are typical of the claims of the

class; Lassen and his counsel will fairly and adequately protect the interests of the class;

common questions of law and fact predominate over any individual issues; and a class action is

superior to other available methods for fairly and efficiently adjudicating the class' claims.   In

fact, Defendants admitted in their depositions that each and every driver was paid in the same

manner and that no driver was paid overtime when he worked more than 40 hours in a week.

## II.   STATEMENT OF FACTS

### A.   The Plaintiff and Other Drivers

Plaintiff Roger Lassen, Jr. ("Lassen") worked as a limousine driver for Defendants from

approximately December, 2010 to August 12, 2013.  (Dec. of Roger Lassen, Exhibit A, ¶ 2.)  He

typically worked 40 to 50 hours per week.  (*Id.*, ¶ 3.)  He picked up and dropped off customers

and maintained Defendant's vehicles pursuant to their workplace rules.  (*Id.*, ¶ 5.)  Murphy

Pierce ("Pierce") worked for Defendant as a limousine driver from approximately October, 2010

through approximately May, 2012.  (Dec. of Murphy Pierce, Exhibit B, ¶ 2.)  He typically

worked 50 to 60 hours per week. (*Id.*, ¶ 3.)   He picked up and dropped off customers and

maintained Defendant's vehicles pursuant to their workplace rules.  (*Id.*, ¶ 4.)  Likewise, Burton

Dupee worked as a limousine driver for Defendants from March 9, 2012 through July 11, 2013.

(Dec. of Burton Dupee, Exhibit C, ¶ 2.   He regularly worked at least 50 hours per week, and

frequently worked more than 60 hours per week. (*Id.*, ¶ 3.)   He picked up and dropped off

customers and maintained Defendant's vehicles pursuant to their workplace rules.  (*Id.*, ¶ 4.)

All three gentlemen, Lassen, Pierce and Dupee, worked as limousine drivers and were

paid in the same manner according to the same policies.  None ever earned overtime pay for

hours worked beyond 40 per week.  (Exhibit A, Declaration of R. Lassen, ¶ 6; Exhibit B,

Declaration of M. Pierce, ¶ 8; Exhibit C, Declaration of Burton Dupee, ¶ 9.)

### B.   The Defendants

Defendant Hoyt Livery, Inc. is a corporation organized and existing under the laws of the

State of Connecticut.  (Answer, ¶ 6.)  Santo Silvestro is the President and Treasurer of Hoyt

Livery, Inc.  (Answer, ¶ 7; Deposition of Santo Silvestro in *Dupee v. Hoyt Livery, Inc., et al.*,

Exhibit D, 6:12-18.)  He describes his role as follows:

> My responsibilities are to make sure that the cars are running correctly,
> everything is working, they're cleaned properly for the customers. If they break
> down, either myself or my son will go and tow them. Just the daily operation of
> the vehicles and making sure that they're running correctly, they're mechanically
> safe, tires.  That's my job.

S. Silvestro Dep.; Exhibit D, 8:14-22.  Mr. Silvestro further confirmed that he is "jack-of-all-

trades responsible for everything."  *Id.*, 9:3-10.

Lynda Silvestro is the Secretary of Hoyt Livery, Inc. (Answer, ¶ 8.)  She is also the Vice

President and Chief Financial Officer.  (Deposition of Lynda Silvestro in *Dupee v. Hoyt Livery,

Inc., et al.*, Exhibit E, 6:16-20.)  Her duties are "primarily finance," but also include human

resources.  (*Id.*, 6:21-7:5.)

Santo and Lynda Silvestro set the method and rate of pay for Defendants' drivers.  (*Id.*,

24:10-15; Exhibit F, Responses to Interrogatories in *Dupee v. Hoyt Livery, Inc., et al*,  response

to Interrogatory No. 8.)  The Silvestros are also responsible for learning and complying with

state and federal wage laws (Exhibit F, response to Interrogatory No.1).  The Silvestros, along

with their daughter Nicole, are responsible for assigning routes to Defendants' drivers.  (*Id.*,

Response to Interrogatory No. 5.)

### C.      Limousine Drivers

All limousine drivers employed by Defendants are subject to the same rules and policies, including the manner in which they are paid.  (Exhibit G, Driver Handbook, at pp. 19-21; S. Silvestro Dep., Exhibit D, 42:14-15; Exhibit A, Declaration of R. Lassen, ¶¶ 7-14; Exhibit B, Declaration of M. Pierce, ¶ 5; Exhibit C, Declaration of Burton Dupee, ¶ 5.)

At the outset, drivers are hired when they either respond to an advertisement or are referred by word of mouth.  (S. Silvestro Dep., Exhibit D, 17:21-18:5.)  All drivers are interviewed and put through the same training process, which includes riding along with a more experienced driver.  (*Id.,* 17:21-18:21.)

The process by which drivers are assigned jobs is the same for each driver as well. Customers first request a ride using an application on a mobile device, by email, or by phone. (L. Silvestro Dep., Exhibit E, 11:13-24.)  A reservationist records the request, and forwards this information to the dispatcher.  (S. Silvestro Dep., Exhibit D, 20:10-19.)  A dispatcher then determines which driver will be called for the job based on the driver's location, the customer's preference, and the driver's schedule.  (L. Silvestro Dep., Exhibit E, 14:12-21; S. Silvestro Dep., Exhibit D, 21:5-17.)  The dispatcher then contacts the driver by phone or email to offer him the job.  (S. Silvestro Dep., Exhibit D, 21:21-23; Exhibit A, Declaration of R. Lassen, ¶ 23; Exhibit B, Declaration of M. Pierce, ¶ 6; Exhibit C, Declaration of B. Dupee, ¶ 6.)  Drivers also call Hoyt's headquarters in New Canaan, Connecticut, by 8:00 PM to see whether they have any trips scheduled for the next morning.  (L. Sylvestro Dep., Exhibit E, 15:22-16:8; Exhibit A, Declaration of R. Lassen, ¶ 18; Exhibit B, Declaration of M. Pierce, ¶ 7; Exhibit C, Declaration of B. Dupee, ¶ 7; Exhibit G, Driver Handbook, p. 39.)  This process applies to all drivers

4

employed by Defendants.  (L. Silvestro Dep., Exhibit E, 16:9-11.)

All drivers are paid in the same manner.  They receive a percentage of the base rate of pay plus a gratuity based on the type of vehicle the driver was operating on the trip in question.  (L. Silvestro Dep., Exhibit E, 16:13-18; Exhibit H, "Driver Payment Detail" records;  Exhibit A, Declaration of R. Lassen, ¶¶ 6-7; Exhibit B, Declaration of M. Pierce, ¶¶ 8-12; Exhibit C, Declaration of B. Dupee, ¶¶ 9-10.)  The fare is typically split "60/40" between Defendants and the driver; that is, the driver receives 25% of the price of the trip plus a 15% gratuity that is "built in automatically."  (S. Silvestro Dep., Exhibit D, 23:23-24:6.)  Further, if a driver has to wait more than one hour for a customer, Defendants will charge the customer an hourly rate for this "wait time," and the driver will receive 40% of this wait time charge.  (*Id.*, 69:6-18.)  The decision to pay drivers in this manner was made when the business opened, approximately 26 or 27years ago.  S. Silvestro Dep., Exhibit D, 24:21-26.

In order to receive payment from Defendants, all drivers must submit completed trip tickets to Defendants' office. (L. Silvestro Dep., Exhibit E, 18:18-21; Trip Ticket, Exhibit I.)  This ticket lists information about the customer's name, the airport, whether the customer was picked up "curbside," the customer's flight number, his or her destination, and the price that Defendants charge the customer for the trip.  (L. Silvestro Dep., Exhibit E, 20:11-21:1.)

Defendants use a "complete limousine software" system called "Voyager" to track trips made by all of its drivers.  (*Id.*, 36:6-17.)  This software logs information about the passenger, car, driver, and payment method for each trip made.  (*Id.*, 36:14-40:25.)  Defendants do not use the feature contained in the software that would allow them to track drivers' hours worked.  (*Id.*, 40:12-25.)

Before approximately July 2013, drivers were never paid any overtime premium pay for hours that they worked over 40 in a week.  (S. Silvestro Dep., Exhibit D, 91:13-24; L. Silvestro Dep., Exhibit E, 24:16-25:14.)  Since that date, drivers are now paid "commission and a half" for hours worked past 40 in a week.  (L. Silvestro Dep., Exhibit E, 25:5-14.)  All full-time drivers are expected to work at least six days a week, and as a result they work at least 50 hours per week driving fares and maintaining vehicles.  (Exhibit G, Driver Handbook, at p. 13; Exhibit A, Declaration of R. Lassen, ¶ 3; Exhibit B, Declaration of M. Pierce, ¶¶ 3,13; Exhibit C, Declaration of B. Dupee, ¶¶ 3, 14.)  Drivers now record their hours on a "weekly job record sheet" that lists the hours that they worked.  (L. Silvestro Dep., Exhibit E, 25:15-26:17; Exhibit J, sample of weekly job records.)  However, drivers are not paid for time that they spend driving to a location without a customer in the car, a circumstance referred to by Defendants as "deadheading."  (S. Silvestro Dep., Exhibit D, 54:20-55:18; 70:17-71:12; Exhibit A, Declaration of R. Lassen, ¶ 11; Exhibit B, Declaration of M. Pierce, ¶ 14; Exhibit C, Declaration of B. Dupee, ¶ 15.)  Drivers are also not paid for the time that they spend bringing vehicles to the shop for service.  (*Id.*, 51:17-52:5; Exhibit A, Declaration of R. Lassen, ¶ 17; Exhibit B, Declaration of M. Pierce, ¶¶ 17-18; Exhibit C, Declaration of B. Dupee, ¶¶ 18-19.)  Nor are drivers paid for wait time that is not charged to the customer.  (S. Silvestro Dep., Exhibit D, 71:2-8; Exhibit A, Declaration of R. Lassen, ¶ 12; Exhibit B, Declaration of M. Pierce, ¶ 19; Exhibit C, Declaration of B. Dupee, ¶.20 .

All drivers are subject to the same job responsibilities in addition to transporting customers.  (S. Silvestro Dep., Exhibit D., 50:10-52:5; Exhibit G, Driver Handbook; Exhibit A, Declaration of R. Lassen, ¶¶ 14-18; Exhibit B, Declaration of M. Pierce, ¶ 6; Exhibit C,

Declaration of B. Dupee, ¶ 6.)  There is an extensive list of duties related to the maintenance of Defendants' vehicles that drivers must carry out each day.  (Exhibit G, Driver Handbook, at pp. 33-40.)  They all must call into Defendant's New Canaan office at least one hour before they are scheduled to make a trip to confirm that they are awake and aware of their assignment.  (S. Silvestro Dep., Exhibit D, 53:18-54:26; Exhibit G, Driver Handbook, p. 39; Exhibit A, Declaration of R. Lassen, ¶ 15; Exhibit B, Declaration of M. Pierce, ¶ 7; Exhibit C, Declaration of B. Dupee, ¶ 8.)

## III.   LEGAL PRINCIPLES

### A.     The Connecticut Minimum Wage Act

Limousine Drivers are entitled to overtime under Connecticut law.  The Connecticut Minimum Wage Act provides that "[n]o employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  Conn. Gen. Stat. § 31-76c.  In cases where, as here, an employee is paid a "piece rate," this overtime premium is calculated by paying the employee one and one-half times the piece rate for all work performed after the fortieth hour.  See Conn. Gen. Stat. § 31-76f.

There are two possible exemptions to the overtime requirements which could be applicable to limousine drivers.  The first is the "taxicab" exemption found at Conn. Gen. Stat. § 31-76i(h), exempting "any person employed as a taxicab driver by any employer in the business of operating a taxicab, if such driver is paid forty percent or more of the fares recorded on the meter of the taxicab operated by him.  This exemption does not apply to Defendants, for several reasons.  First, they are not "in the business of operating a taxicab" as required by the exemption.

7

They do not hold a taxicab certificate.  (S. Silvestro Dep., Exhibit D, 16:6-8.)  Their cars are not

taxicabs, as they do not have meters.  (S. Silvestro Dep., Exhibit D, 15:20-22; Exhibit A,

Declaration of R. Lassen, ¶ 21; Exhibit B, Declaration of M. Pierce, ¶ 22; Exhibit C, Declaration

of B. Dupee, ¶ 23.)  Nor are Hoyt's drivers permitted to cruise for passengers.  (S. Silvestro

Dep., Exhibit D, 21:18-20; Exhibit A, Declaration of R. Lassen, ¶ 20; Exhibit B, Declaration of

M. Pierce, ¶ 21; Exhibit C, Declaration of B. Dupee, ¶ 22.)  Courts have repeatedly found that

services akin to those provided by Defendants do not qualify their drivers as exempt taxicab

drivers, noting differences such as the type of license that the company holds, whether there is a

meter in the car determining the cost of the trip, how the drivers are paid by the customer,

whether the drivers "cruise" the streets looking for fares, and whether the employer markets

itself as a "taxicab" company.  *Mascol v. E & L Transport, Inc.,* 387 F. Supp. 2d 87 (E.D.N.Y.

2005);[1] *McKinney v. Med Group Transp. LLC*, 2013 U.S. Dist. LEXIS 177419 at *14-25 (2013

U.S. Dist. LEXIS 177419 (E.D. Wis. Dec. 18, 2013) (Exhibit K); *Herman v. Brewah Cab, Inc.*,

992 F. Supp. 1054 (E.D. Wis. 1998).   The U.S. Department of Labor stated in a 1998 opinion

letter, "[t]he ordinary meaning of that term [taxicab] contemplates vehicles that are offered for

hire to the general public on city streets. While it is not necessary that all the transportation be

provided to persons who 'flag down' the vehicles, that is an important aspect of the common

meaning of 'taxicab.'" (Exhibit L).

The second possible exemption is the "Motor Carrier Exemption," found at Conn. Gen.

Stat. § 31-76i(a).  This exemption excludes from overtime coverage "any driver or helper where

the U.S. Secretary of Transportation has the power to establish qualifications and minimum

---

[1] When interpreting the Connecticut Minimum Wage Act, Connecticut courts rely on federal precedent interpreting analogous provisions of the Fair Labor Standards Act.  *Roto-Rooter Services Co. v. Dept. of Labor*, 219 Conn. 520, 528 n. 8.

hours of service" is not governed by the Connecticut Minimum Wage Act.  Conn. Gen. Stat. §
31-76i (a).  However, the U.S. Secretary of Transportation's power does not extend to limousine
drivers.  Rather, the power of the Secretary of Transportation to regulate overtime hours applies
only to drivers who (1) work for an employer that provides motor vehicle transportation for
compensation; (2) are employed as drivers, driver's helpers, loaders, or mechanics whose duties
affect the safety of operation of motor vehicles in transportation on public highways in interstate
or foreign commerce; and (3) are not covered by the small vehicle exception.  *See Hernandez v.
Alpine Logistics, LLC*, 2011 U.S. Dist. LEXIS 96708 at *11-13 (W.D.N.Y. Aug. 29, 2011)
(Exhibit M); *Botero v. Commonwealth Limousine Servs.*, 2013 U.S. Dist. LEXIS 104947 at *30-
35 (D. Mass. April 12, 2013) (Exhibit N).  Specifically not subject to this exemption are drivers
of vehicles under 10,000 pounds or that carry fewer than eight passengers.  (*Id*.; Dept. of Labor
Field Assistance Bulletin 2010-2, Exhibit O)  Most of Defendants' vehicles are passenger cars
such as Lincoln Town Cars and Chrysler 300s, which are under this weight threshold and carry
fewer than eight passengers; thus, they are not covered by this exemption to the CMWA's
overtime provisions.  See S. Silvestro Dep., Exhibit C, 9:11-13:7; see also 2011 Lincoln Town
Car Specifications, Exhibit P (4,352 to 4,467 lb. Gross Vehicle Weight); 2014 Chrysler 300
Specifications, Exhibit Q (3,961 to 4,006 lbs Gross Vehicle Weight).

     **B.**    **Class Certification Under Fed. R. Civ. P. 23**

     Plaintiffs moving for certification of a class under Fed. R. Civ. P. 23(b)(3) must show
that six requirements are met: 1) the putative class must be sufficiently numerous; 2) the
class must present common legal issues; 3) the claims of the named plaintiffs must be
typical of the class; 4) the named plaintiff and class counsel must adequately represent the

interests of the class; 5) "law or fact questions common to the class predominate over questions affecting individual members;" and 6) a class action must be the superior means of proceeding with the litigation. *Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 32 (2d Cir. 2006). The first four requirements- numerosity, commonality, typicality, and adequacy- are set forth in Fed. R. Civ. P. 23(a) and apply to all class actions. The last two requirements- predominance and superiority- are specific to class actions brought under Fed. R. Civ. P. 23(b)(3). In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), the Supreme Court explained that the inquiry into these requirements is not an inquiry into the merits of the case: "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."

District Courts within this circuit have frequently used the efficiency of Rule 23 class actions to address the claims of employees asserting claims under their state's wage and hours laws. *See, e.g., Perkins v. Southern New England Telephone Co.,* 669 F. Supp. 2d 212 (D. Conn. 2009) (certifying a Rule 23 class of "Level One Managers" claiming they had been misclassified as exempt executives under the CMWA); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (certifying Rule 23 class of systems engineers claiming misclassification and unpaid overtime under the CMWA).

In *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) (Lynch, J.), the court certified a class of assistant managers of retail pharmacies claiming that they were misclassified as exempt from overtime provisions under New York Labor Law and the FLSA. *Id.* at 154. *See also Torres v. Gristede's Operating Corp.*, 2006 WL 2819730 at *1 (S.D.N.Y. 2006) (Exhibit R)

(certifying class of co-managers and department managers of a supermarket chain suing for

violations of New York Labor Law under Rule 23); *Iglesias-Mendoza, supra*, 239 F.R.D. at 366

(class of agricultural workers suing for unpaid overtime certified New York Labor Law);

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 392 (W.D.N.Y. 2005) (certifying state law class

action under Rule 23); *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004)

(certifying Rule 23 class of misclassified kitchen "managers" suing for unpaid overtime under

New York Labor Law).

> The Second Circuit has discussed the use of Rule 23 in a wage and hour case:

> [W]e note that district courts in this Circuit have certified classes on state law claims that turn on the question of FLSA exemption for a particular group of employees. *See, e.g., Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152 (S. D. N. Y.2008). But these cases confirm that the exemption inquiry requires examination of the "dut[ies] that the employee" actually "performs," 29 C.F.R. § 541.700(a), and they involve evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria. *See Damassia,* 250 F.R.D. at 156-61 (certifying Rule 23 class action of overtime claims under New York Labor Law and concluding that plaintiffs satisfied the predominance requirement by, *inter alia,* demonstrating that the job duties of putative class members were "largely consistent" across the class and that individual differences in job tasks would not be of the "magnitude" to "cause individual issues to predominate," *id.* at 160). While such evidence will not necessarily be dispositive of the overall predominance inquiry, it will tend to show that the subsidiary questions involved in resolving exemption will be answerable through evidence generally applicable to the class.

*Myers v. Hertz Corp.* 624 F.3d 537, 549 (2nd Cir. 2009).[2]  Thus, so long as the plaintiffs' job

duties are "similar in ways material to the establishment of the exemption criteria," class

certification is appropriate.

---

[2] While the denial of class certification was affirmed in that case, the record in that case fell far short of the record in *Damassia* or the record in this case.  Myers' class certification motion was supported by only one deposition of one executive who testified that there were similarities and differences in the class members' duties.

District courts in Connecticut and around the country have certified class actions for plaintiffs alleging violations of state wage and hour laws. *See, e.g., Scott v. Aetna*, s*upra* (certifying class of IT workers at Aetna); *Perkins v. SNET, supra* (certifying class of managers at SNET); *Bouaphakeo v. Tyson Foods, Inc.*, 546 F. Supp. 2d 870, 909 (N.D. Iowa 2008) (certifying both an FLSA collective action and a Rule 23 class action under Iowa state wage/hour law; holding that "[t]he class members of both the FLSA collective action and the Rule 23 class action deserve notice of the Plaintiffs' claims and their opportunity to 'opt-in' or 'opt-out' as the case may be"); *Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275, 294 (D. Neb. 2010) (certifying a class action under Nebraska state law for employees seeking unpaid overtime); *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 472-73 (E.D. Cal. 2010) (approving a settlement for a case in which an FLSA collective action and a Rule 23 class action had been certified: "[h]ad Congress believed that allowing a state opt-out action to go forward simultaneously with an opt-in FLSA action would undermine the statute, it would not have expressly indicated that the FLSA does not preempt state labor laws").

## IV.    **DISCUSSION**

### A.    **Plaintiffs' Motion for Class Certification under Fed. R. Civ. P. 23 Should Be Granted**

#### 1.    *The Elements of Fed. R. Civ. P. 23(a) Are Met*

##### a.    **Numerosity**

Rule 23(a)(1) requires Plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

In this case, Mr. Silvestro testified that Defendants employ "around 50" drivers (S. Silvestro Dep., Exhibit D, 6:19-22); at least 40 of whom are full time.  (*Id*., 44:5-13).  Further, in the separate action, *Dupee v. Hoyt Livery, Inc., et al.*, these same Defendants identified 82 persons who worked for them as Drivers between March 9, 2012 and July 11, 2013.  See Exhibit F, response to interrogatory 2; Exhibit S, List of Drivers.  Thus the numerosity requirement of Fed. R. Civ. P. 23(a) is satisfied.

> **b.**      **Questions of Law and Fact Are Common to the Class**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Minor factual differences will not preclude class certification if there is a common question of law."  *Macedonia Church v. Lancaster Hotel Ltd. P'ship*, 270 F.R.D. 107, 116 (D. Conn. 2010); *Damassia, supra*, 250 F.R.D. at 156-57 (finding commonality in a class of assistant managers under New York state labor law): *Scott, supra,* 210 F.R.D. at 267 (finding commonality because "each performed the work of a Systems Engineer as defined by Aetna, and each was allegedly underpaid the overtime compensation they were entitled to receive for their services.").

In certifying a Rule 23 class action of "ambulette"[3] drivers, the court explained in *Lewis v. Alert Ambulette Serv. Corp.*, 2012 WL 170049 at *25-26 (S.D.N.Y. Jan. 19, 2012) (Exhibit S):

> Where the question of law involves "standardized conduct of the defendant ... [to the plaintiff], a common nucleus of operative fact is typically presented and the commonality requirement ... is usually met." *E.g. Labbate-D'Alauro v. GC Servs. Ltd. Pshp*., 168 F.R.D. 451, 456 (E.D.N.Y. 1996). In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices. *E.g. Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) ("All potential class members are alleged to have been harmed by a common practice— defendants' failure to adequately compensate employees for overtime hours. The

---

[3] An "ambulette" is a medical transportation vehicle.

legal theory set forth in Noble's Complaint is common to all class members—that this alleged failure to pay overtime violates New York's labor law. Accordingly, the commonality requirement is satisfied.").

The elements of Plaintiff's claim that limousine drivers are not exempt will be determined by deciding the following common questions:

> (1)     whether Defendants can prove that they are entitled to any exemption under Connecticut Wage Law, that is, whether they are actually operating taxicabs or whether the U.S. Department of Transportation has established rules governing these drivers under the Motor Carrier Act; and

> (2)     whether Defendants acted unreasonably, arbitrarily, or in bad faith as to their classification as exempt from overtime as is required to claim double penalty damages under the Connecticut Minimum Wage Act. *See Sansone v. Clifford*, 219 Conn. 217, 229 (1991).

As in *Lewis, supra*, Lassen challenges the "standardized conduct" of Defendants, and he will ask the same questions of law and fact.  Accordingly, the claims of all class members will be determined by addressing common questions of law and fact.

### c.     Plaintiff's Claims Are Typical of the Class Claims

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (citation omitted). Like commonality, typicality need not be complete. The class members' claims must simply arise from "the same course of events" and require "similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Lassen's claims arise from the same course of conduct as the claims of the class –

14

Defendants' decision to classify all full time limousine drivers as exempt and their failure to pay them overtime compensation throughout the class period.  No class member has any specific claim that differs from that of any other class member.

### d.  Plaintiff Will Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy this requirement, plaintiffs must show that: 1) there is an absence of conflict and antagonistic interests between them and the class members, and 2) plaintiffs' counsel is qualified, experienced and capable." *Iglesias-Mendoza v. La Belle Farm*, 239 F.R.D. 363, 372 (S.D.N.Y. 2007).

Roger Lassen, Jr. is an adequate representative of the Connecticut class of full time limousine drivers.  He worked for Defendants from December 2010 until August 2013.  Lassen Dec., Exhibit A, ¶ 2.  He states in his declaration that he was subject to the same challenged pay practices as all other full time limousine drivers.  *Id.*, ¶¶ 6-12.

In this case, there is no evidence whatsoever that any of the class members have any adverse interests.  To the extent that Defendants have any defense unique to a single class member, "[a] defense unique to the putative class representative will be fatal under Rule 23 only when it threatens to become the focus of the litigation." *Iglesias-Mendoza, supra*, 239 F.R.D. at 372.

In addition, the attorneys representing the plaintiffs in this action are experienced and well qualified to protect the interests of the opt-out class, as well.  *See* affidavits of Anthony J. Pantuso, III, Exhibit T, and Richard E. Hayber, Ex. U.

2.      *The Elements of Fed. R. Civ. P. 23(b)(3) Are Met*

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

That a plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (citing *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

a       **Common Questions of Law and Fact Predominate**

To establish predominance, a plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139.  Simply because a defense "may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (internal quotations omitted).  Where plaintiffs are "unified by a common legal theory" and common facts, the predominance requirement is satisfied. *McBean v. The City of New York*, 228

16

F.R.D. 487, 502 (S.D.N.Y. 2005).

The "key consideration" is whether or not one instance of conduct by the defendant "affected the putative class members at the same time…, as opposed to numerous instances of [conduct] over time."  *Macedonia Church v. Lancaster Hotel Limited Partnership*, 270 F.R.D. 107, 121 (D. Conn. 2010).  In *Perkins, supra*, at 224-25; the court found predominance because there was evidence that "despite some dissimilarities, the potential class members performed similar non-exempt duties, and exercised similar amounts of discretion in their day-to-day work, and thus, faced a common policy of misclassification by SNET."  *See also Scott, supra*, 210 F.R.D. at 267-68 (finding predominance because each "class member performed the work of a systems engineer as defined by Aetna…").

Here, all members of the class are unified by common facts – that all full time limousine drivers have the same material duties, and that Defendants classified them all as exempt at one time by one decision.  They are also unified by a common legal theory – that Defendants' exempt classification of, and failure to pay overtime compensation to, all full time limousine drivers violates Connecticut law.  *Iglesias-Mendoza*, 239 F.R.D. at 373 (finding that the issue of whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment"); *Kamar v. Radio Shack Corp*., 254 F.R.D. 387, 398-99 (C.D. Cal. 2008) ("When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability. Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is

easily established"); *Campbell, supra*, 253 F.R.D. at 605 (holding that common proof would predominate in the trial proposed by plaintiffs even though three separate exemptions to the California wage and hour law might apply to class members).

Specifically, Plaintiff will litigate the legal questions using the same facts and the same evidence for himself and for the class.  Santo and Lynda Silvestro testified that all drivers are the same:

- All drivers are given the same training.  S. Silvestro Dep., Exhibit D, 41:26-26.

- The driver handbook, with its description of how drivers are paid and its extensive and uniform maintenance duties (Exhibit G), applied to all drivers.  S. Silvestro Dep., Exhibit D, 42:11-15.

- All drivers are required to perform the same tasks when they are assigned jobs and when they check in before reporting to jobs.  *Id.*, 53:18-54:19; L. Silvestro Dep., Exhibit E, 15:22-16:11.

- All drivers must submit the same paperwork to be paid.  L. Silvestro Dep., Exhibit E, 18:15-21; 25:15-26:17.

- Prior to July 2013, no driver received any overtime premium pay.  *Id.*, 24:16-25:15.

- Lynda and Santo Silvestro made the decision to exempt all drivers from overtime premium pay.  (Exhibit F, response to Interrogatory No.1)

The evidence on these issues will thus consist of common proof; that is, evidence applicable to the entire class.  "If common issues predominate as to liability, the court should

ordinarily find predominance, even if some individualized damage issues exist." *Perkins, supra*, 669 F. Supp. 2d at 224 (internal quotations omitted).

The chart below illustrates the common proof that Plaintiffs will use to counter Defendants' claim that they are exempt at trial:

| COMMON PROOF |
| --- |
| Defendants' uniform one-time decision to classify all full time drivers as exempt from overtime pay (Exhibit F) |
| Testimony of representative drivers (Exhibits A, B, and C) |
| Testimony of Defendants (Exhibits D and E) |
| Common corporate policies and procedures (Exhibit G) |
| Common forms that drivers fill out and submit to be paid (Exhibits H, I, J) |

Defendants likely will attempt to prove that the trial in this case will necessitate introduction of individualized proof and that common proof will not predominate. However, because all drivers were subject to the same exact treatment with regard to their pay and exemption under Connecticut's Minimum Wage law, there is no individualized proof that can be used in this case. The question is simply whether the business itself is governed by either the "Taxicab" exemption or the "Motor Carrier" exemption, not whether the duties of individual drivers exempt them from overtime pay.

### b.      Class Treatment Is Superior to Other Alternatives.

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the

superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing the case as a class action. Fed. R. Civ. P. 23(b)(3). Denying class certification on manageability grounds is "disfavored" by the courts and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotations omitted).

In this case, "[t]he cost of individual litigation on an overtime exemption claim may be prohibitive for the members of the potential class, which indicates that the interests of the class would be best served by certification." *Perkins, supra*, 669 F. Supp. 2d 225. As has been set forth *supra*, the common proof that will be used to counter Defendants' claim that its business is exempt from the Connecticut Minimum Wage Act ensures that the trial in this case will be manageable and efficient.

Finally, an opt-out class action would best serve the interests of potential class members who are interested in joining the action but who are afraid of retaliation from Defendants, particularly those who are currently employed by it. *See Scott, supra*, 210 F.R.D. at 268 (holding that a class action was the best way to adjudicate an overtime claim in part because "class members may fear reprisal and would not be inclined to pursue individual claims."

## V.      <u>CONCLUSION</u>

This case should be certified to proceed as a class action under F.R.C.P. 23. Plaintiff has established that the requirements of Rule 23(a), numerosity, commonality, typicality and adequacy of representation, have been met. He also has established the requirements of Rule

23(b)(3), predominance and superiority.  Accordingly, the claims under the CMWA should be

permitted to proceed on a class basis.

<div style="margin-left: 40%;">

Plaintiff, Roger Lassen, Jr., Individually and
on behalf of all similarly situated individuals


By: _____/s/_____.
  Anthony J. Pantuso, III
  The Quinn Law Firm, LLC
  204 Broad Street
  Milford, CT 06460
  Fed No.: ct11638
  (203) 877-5400
  (203) 877-5416 (facsimile)
  apantuso@quinn-lawfirm.com
  Attorneys for the Plaintiff

</div>

**CERTIFICATION OF SERVICE**

I certify that on **February 12, 2013** the foregoing **Memorandum of Law in Support of Plaintiff's Motion for Class Certification Pursuant to Rule 23 of the Federal Rules of Civil Procedure** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing.  Parties may access this filing through the Court's CM/ECF system.

                                        _____/s/_____.
                                        Anthony J. Pantuso, III

22