# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROGER LASSEN, JR., individually and on behalf of all other similarly situated individuals<br>Plaintiff<br><br>v.<br><br>HOYT LIVERY, INC., SANTO SILVESTRO and LYNDA SILVESTRO<br>Defendant | CIVIL ACTION NO.:<br>3:13-cv-01529-MPS<br><br><br><br><br>February 12, 2014 |

### DECLARATION OF ROGER LASSEN, JR.

I, Roger Lassen, Jr., declare under penalty of perjury:

1. I am over the age of 18 and understand the obligations of an oath.

2. I was employed as a full time limousine driver by Hoyt Livery, Inc., from December 2010 until August 12, 2013.

3. As a full-time driver, I was expected to work at least 6 days a week, although I usually worked only 5 days a week, and I usually worked between 40 and 50 hours per week.

4. As A full-time driver, I was assigned a specific vehicle, a Lincoln Town Car.

5. My job involved picking up and dropping off customers and maintaining my vehicle per Hoyt's rules.

6. During this time, I was paid on a strictly "per trip" basis. I did not earn any more money for trips that I took after I had already worked 40 hours in a week.

7. I received 25% of the cost of the trip to the customer and the 15% or 20% gratuity charged by Hoyt to the customer.

8. I was paid by submitting a "weekly job record" to Hoyt's office. This sheet tracked the trips that I took.

1

9. I observed other drivers submitting the same forms in order to be paid.

10. I spoke to other full time drivers in the course of my employment and they told me that none of them ever received any overtime premium pay for hours worked beyond 40 in one week.

11. I was never paid for time that I spent in the car without a customer; that is, driving to pick up a customer or driving back to New Canaan after dropping off a customer.

12. I occasionally received 40% of the waiting time charged to a customer if he or she was later than anticipated and I had to wait for him or her, but I was not paid for waiting time, including Hoyt's complimentary 1-hour wait time, if the customer was not charged.

13. I am not sure, but I may have been given the Driver Handbook when I started working for Hoyt.

14. I do know that the rules contained in this handbook applied to me and to all other drivers.

15. Along with all other full-time drivers, I was expected to call Hoyt at least one hour before my first trip of the day to let them know that I was awake and aware of the trip.

16. Along with all other full-time drivers, I was also required to maintain the car to which I was assigned. This entailed, among other things:
    - Checking to make sure the car was clean, no trash and ashtrays emptied
    - Making sure the tires were sufficiently inflated and in good condition
    - Taking the car to the Silvestro's shop (New Canaan Auto Body) if and when there was anything wrong with the car
    - Putting the day's New York Times and Wall Street Journal into the car
    - Checking the fluids daily
    - Washing and waxing the car

- Regular oil changes on the car
- Regular transmission service on the car
- Rotating the tires and checking for tire wear

17. I was not paid for the time I spent maintaining the vehicle.

18. Along with all other full-time drivers, I was required to call in by 8:00 pm to get my assignments for the next day, and to find my assignments on a map the night before I made any trip to make sure I knew where I was going.

19. I reported directly to the dispatchers, and then to Santo and Lynda Silvestro.

20. I was never allowed to "cruise" for fares as one would in a taxi.

21. There was never a meter in any car that I drove.

22. I had no control over the trips that I took beyond accepting or refusing a route.

23. When I was assigned a trip I would receive an email or a phone call from the dispatcher telling me where to pick up a customer. When I was done, I would fill out a trip ticket with all of the information that the office needed to process the trip and get paid by the customer.

24. I have reviewed the facts contained in the Complaint in this matter, and swear to the truth of the facts contained therein.

*/s/ Roger Lassen, Jr.*
Roger Lassen, Jr.

SUBSCRIBED AND SWORN TO before me the 12th day of February, 2014.

*/s/ Anthony J. Pantuso, III*
Anthony J. Pantuso, III
Commissioner of the Superior Court

3