# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROGER LASSEN, JR., individually and on behalf of all other similarly situated individuals<br>　　　　Plaintiff<br><br>v.<br><br>HOYT LIVERY, INC., SANTO SILVESTRO and LYNDA SILVESTRO<br>　　　　Defendant | CIVIL ACTION NO.:<br>3:13-cv-01529-MPS<br><br><br><br><br>February 12, 2014 |

## DECLARATION OF BURTON DUPEE

I, Burton Dupee, declare under penalty of perjury:

1. I am over the age of 18 and understand the obligations of an oath.

2. I was employed as a full time limousine driver by Hoyt Livery, Inc., from March 9, 2012 until July 11, 2013.

3. As a full-time driver, I regularly worked at least 50 hours per week, and frequently worked more than 60 hours per week.

4. My job involved picking up and dropping off customers and maintaining my vehicle per Hoyt's rules.

5. Based on my personal observations, it is clear that all drivers at Hoyt Livery, Inc. were subject to the same rules and policies.

6. All drivers were assigned jobs by receiving either a phone call or an email from a dispatcher.

7. All drivers were required to call Hoyt by 8:00 p.m. to see whether we had trips scheduled for the next morning.

8. All drivers were required to phone in to Hoyt every morning at least one hour before our

1

first pick-up.

9. I was paid on a strictly "per trip" basis. I did not earn any more money for trips that I took after I had already worked 40 hours in a week.

10. I received 25% of the cost of the trip to the customer and the 15% or 20% gratuity charged by Hoyt to the customer.

11. I was paid by submitting a "weekly job record" to Hoyt's office. This sheet tracked the trips that I took.

12. I observed other drivers submitting the same forms in order to be paid.

13. I spoke to other full time drivers in the course of my employment and they told me that none of them ever received any overtime premium pay for hours worked beyond 40 in one week.

14. As a full-time driver I was expected to work at least six days a week.

15. I was never paid for time that I spent in the car without a customer; that is, driving to pick up a customer or driving back to New Canaan after dropping off a customer.

16. I was given the Driver Handbook when I started working for Hoyt.

17. The rules contained in this handbook applied to me and to all other drivers.

18. Along with all other full-time drivers, I was required to maintain the car to which I was assigned. This entailed, among other things:
    - Checking to make sure the car was clean, no trash and ashtrays emptied
    - Making sure the tires were sufficiently inflated and in good condition
    - Taking the car to the Silvestro's shop (New Canaan Auto Body) if and when there was anything wrong with the car
    - Putting the day's New York Times and Wall Street Journal into the car

2

- Checking the fluids daily
- Washing and waxing the car
- Regular oil changes on the car
- Regular transmission service on the car
- Rotating the tires and checking for tire wear

19. I was not paid for the time I spent maintaining the vehicle.

20. I was not paid for time spent waiting for the customer, except on those few occasions when the customer was charged for wait time.

21. I reported directly to Santo and Lynda Silvestro.

22. I was never allowed to "cruise" for fares as one would in a taxi.

23. There was never a meter in any car that I drove.

24. I had no control over the trips that I took beyond accepting or refusing a route.

_____
Burton Dupee

SUBSCRIBED AND SWORN TO before me the 12th day of February, 2014.

_____
Anthony J. Pantuso, III
Commissioner of the Superior Court

3