**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ROGER LASSEN, JR., *individually and on behalf of all other similarly situated individuals*,<br>        Plaintiff,<br><br>        v.<br><br>HOYT LIVERY INC., SANTO SILVESTRO, and LYNDA SILVESTRO,<br>        Defendants. | No. 3:13-cv-01529 (JAM) |

**RULING GRANTING PLAINTIFF'S MOTIONS FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND CERTIFICATION OF RULE 23 CLASS ACTION [Docs. #21, 22]**

For nearly three years, plaintiff Roger Lassen, Jr., worked as a limousine driver for defendant Hoyt Livery Inc. ("Hoyt Livery" or "the company"), a Connecticut company owned by defendants Santo Silvestro and Lynda Silvestro. Plaintiff and all other limousine drivers at Hoyt Livery were paid in accordance with a commission-based system, and drivers did not receive more money if they worked more than 40 hours in a week. Plaintiff contends that Hoyt Livery's compensation system violated the overtime-pay requirements of both the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Connecticut Minimum Wage Act, Connecticut General Statutes § 31-58 *et seq.* ("CMWA").[1]

Seeking to represent a class of full-time Hoyt Livery limousine drivers, plaintiff has filed motions for conditional certification of a FLSA collective action under 29 U.S.C. § 216(b) and

---

[1] In addition to asserting these FLSA and CMWA claims, plaintiff's complaint also sets forth a claim for illegal wage deductions in violation of Connecticut General Statutes § 31-71e. Plaintiff's counsel has represented to the Court that they will file an amended complaint removing this claim after the Court renders a decision on the pending motions addressed in this ruling.

1

certification of a CMWA class action under Fed. R. Civ. P. 23. Because I conclude that the

requirements for a collective action and for a class action have been established, I grant both

motions for certification.

**Background**

Hoyt Livery is a limousine company that primarily serves residents of Fairfield County,

Connecticut, providing transportation to and from the New York metropolitan area airports and

Manhattan. The company is owned by Santo Silvestro, who serves as president and treasurer,

and Lynda Silvestro, who acts as secretary, vice president, and chief financial officer.[2] Hoyt

Livery employs approximately 50 limousine drivers, including at least 40 full-time drivers.

Plaintiff was a full-time limousine driver for Hoyt Livery from December 2010 to August 2013.

There is no dispute that, during the time period at issue in this litigation, plaintiff and all

other full-time limousine drivers at Hoyt Livery were compensated under the same commission-

based system. Under this system, limousine drivers were assigned by a dispatcher to work trips

requested by customers, and the assigned driver would earn 40% of whatever fee was charged to

the customer for the requested trip. That 40% figure included two components: 25% was

designated as a "commission," while 15% was designated as a "built-in gratuity."[3] Hoyt Livery

requires its full-time drivers to be available six days a week, but drivers are free to accept or

reject any trip offered by the dispatcher, and there is no requirement that drivers work any

minimum or maximum number of hours per week.

Hoyt Livery requires its full-time drivers to perform certain activities for which they

receive no additional compensation beyond the 40% commission. For example, Hoyt Livery

---

[2] Lynda Silvestro's responsibilities include overseeing human resources. Both of the Silvestros are responsible for determining the rate and method of payment to limousine drivers, and ensuring Hoyt Livery's compliance with state and federal wage and hour laws.

[3] For the sake of clarity, I hereafter refer to the "commission" and the "built-in gratuity" collectively as the

provides customers with one "free" hour of wait time for pick-up at an airport, and drivers do not receive any additional compensation for this time. (If, however, the wait time exceeds one hour, then the company charges the customer $55 per hour, and the driver receives 40% of that additional wait time charge.) Nor does the company provide any additional compensation to drivers for time spent driving to a pick-up location without a customer in the vehicle, a practice known as "deadheading." Additionally, drivers are expected to maintain their assigned company vehicle, bring company vehicles assigned to them in for service, check their vehicle's fluids, wash and wax their vehicle, take the vehicle to an auto body shop if necessary, bring the vehicle to an auto repair shop for regular oil changes and transmission service, and rotate the vehicle's tires—all without additional compensation beyond the 40% commission.

Limousine drivers at Hoyt Livery are required to maintain daily trip tickets and weekly trip logs in order to be paid. The daily trip tickets include information about the customer's name and destination, as well as the price that the customer is charged and the driver's mileage on each trip. The weekly trip logs indicate the date, place of pick-up and drop-off, and the mileage of the round trip, among other information. Hoyt Livery also uses a computer software system to track trips made by its drivers and to calculate the commission earned by each driver. While the software system has an option to track the hours worked by drivers, defendants did not utilize that feature. Indeed, it is undisputed that until July 2013 Hoyt Livery did not maintain any hourly time records for its limousine drivers.

It is also undisputed that Hoyt Livery did not provide any overtime pay to drivers who worked more than 40 hours per week. Drivers earned the same "flat rate" 40% commission per trip no matter how many hours they had worked or trips they had taken in a week. There remains considerable dispute, however, as to whether plaintiff or other drivers actually worked more than

---

"40% commission."

40 hours per week and, relatedly, what activities properly constitute work time for which limousine drivers are entitled to be compensated.

At least three former Hoyt Livery limousine drivers claim that they regularly worked more than 40 hours per week. Plaintiff states that he usually worked between 40 to 50 hours per week driving for Hoyt Livery. Another former driver—Murphy Pierce—states that he usually worked between 50 to 60 hours per week.[4] And a third former driver—Burton Dupee—claims that he regularly worked at least 50 hours per week, and frequently worked more than 60 hours per week.[5]

Defendants do not deny that some drivers worked more than 40 hours per week. When asked at his deposition whether any Hoyt Livery drivers work more than 40 hours per week, defendant Santo Silvestro testified: "Probably. I'm sure there's some of them, you know, that are." Doc. #39 at 2. Still, defendants maintain that it is unusual for a driver to work more than 40 hours per week. Defendants have submitted 12 virtually identical affidavits by individuals currently employed as full-time limousine drivers at Hoyt Livery. In these 12 driver affidavits, each driver states that, "[w]ith perhaps some minor exceptions," he does not "believe" that he has worked over 40 hours per week. Doc. #29-2, ¶ 7.

Around May 2013, the United States Department of Labor ("DOL") began an audit of Hoyt Livery and other Connecticut limousine companies regarding overtime pay. As a result of the audit, Hoyt Livery instructed its drivers in June 2013 to record the hours that they work each week, although the company does not specify what particular work-related activities should or should not be recorded as work time. For example, the company does not instruct employees

---

[4] Pierce has filed has filed written notice of his consent to join this action as a party plaintiff pursuant to 29 U.S.C. § 216(b). *See* Doc. #15.
[5] Dupee has filed a separate federal action in this District alleging substantially similar claims against the same defendants. *See Dupee v. Hoyt Livery Inc. et al*, No. 3:13-cv-01185-DFM.

whether "deadheading," wait time at an airport of less than an hour, or time spent maintaining a company vehicle should be recorded as work time. Nevertheless, Hoyt Livery drivers are now paid "[o]ne and a half times their weekly commission" for hours worked in excess of 40 per week. Doc. #29-9 at 8. No limousine drivers have claimed overtime pay since the new policy was instituted. Hoyt Livery maintains that this "change in policy was instituted not as a concession that wage laws had been violated by Hoyt, but rather to satisfy the DOL during the time the audit was being conducted." Doc. #29-1, ¶ 28. In October 2013, plaintiff initiated this putative collective action and class action lawsuit against defendants.

## Discussion

Plaintiff moves for conditional certification of a FLSA collective action and for Rule 23 class action certification of his CMWA claim. While there is no inherent incompatibility between these two certification motions, *see Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247-49 (2d Cir. 2011), the certification inquiries for each of these motions are "quite distinct," *see Myers v. Hertz Corp.*, 624 F.3d 537, 556 (2d Cir. 2010). Accordingly, I address each motion separately below.

### 1. *Motion for Conditional Certification of FLSA Collective Action*

Plaintiff moves for: (1) conditional certification of a FLSA collective action consisting of all persons who have been employed as full-time limousine drivers at Hoyt Livery in the previous three years; (2) an order requiring that defendants disclose the names, last known addresses, telephone numbers, and email addresses of all persons employed as full-time limousine drivers at the company during the past three years; and (3) authorization of the issuance of notice to these potential opt-in plaintiffs. For the reasons set forth below, I grant plaintiff's motion, except with regards to certain aspects of his disclosure and notice requests.

5

Congress enacted the FLSA to "protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.'" *Shahriar*, 659 F.3d at 243 (quoting 29 U.S.C. § 202(a)). In furtherance of this goal, the FLSA imposes numerous "wage and hour" requirements, including an overtime provision mandating employers to pay non-exempt employees time-and-a-half for each hour worked in excess of 40 hours per week.[6] *See* 29 U.S.C. § 207(a)(1).

Section 16(b) of the FLSA not only authorizes an employee to bring a private cause of action on his or her own behalf but also allows for an employee to bring a "collective action" on behalf of similarly situated employees. *See* 29 U.S.C. § 216(b).[7] A collective action under the FLSA is "fundamentally different" from a class action under Fed. R. Civ. P. 23. *Genesis Healthcare Corp. v. Symczyk*, __ U.S. __, 133 S. Ct. 1523, 1529 (2013). Unlike a Rule 23 class action in which putative class members must opt *out* in order to remove themselves from the class, a FLSA collective action requires employees to affirmatively opt *in* to the case in order to join the collective action group. 29 U.S.C. § 216(b); *see also Alli v. Boston Mkt. Co.*, 2011 WL 4006691, at *1 (D. Conn. 2011). The Supreme Court has held that "district courts have discretion, in appropriate cases, to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt in as represented

---

[6] As relevant here, the exemptions to this rule include the taxicab exemption, *see* 29 U.S.C. § 213(b)(17), and the motor carrier exemption, *see* 29 U.S.C. § 213(b)(1). While plaintiff's memorandum in support of his motion for conditional collective action certification discusses the inapplicability of these exemptions, defendants expressly do *not* claim either of these exemptions at the present time. *See* Doc. #29 at 13-14, n.4. Defendants hold out the possibility that they will seek to assert the motor carrier exemption at a later date, but that issue is not before the Court at this time.

[7] 29 U.S.C. § 216(b) provides in relevant part: "Any employer who violates the [overtime provisions of the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in . . . the preceding sentence[] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).[8]

The Second Circuit has described a two-step process for district courts to evaluate the

certification of collective actions under the FLSA:

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. . . . The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* "similarly situated" plaintiffs do in fact exist. At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Myers*, 624 F.3d at 554-55 (citations and internal quotation marks omitted).

A court's decision regarding whether to certify a FLSA collective action does not depend

on the merits of the plaintiff's claims. *See, e.g.*, *Perkins v. S. New England Tel. Co.*, 669 F. Supp.

2d 212, 219 (D. Conn. 2009) ("At the certification stage, a court need not judge the merits of the

plaintiff's claims because they are irrelevant to the collective action inquiry, as long as plaintiffs

assert a plausible basis for their claim." (citations omitted)). Rather, the decision depends solely

upon whether the plaintiff has met his minimal burden of demonstrating that a class of "similarly

situated" employees exists. "Generally, courts [will conditionally certify a collective action and]

authorize dissemination of notice upon a 'simple showing' that other employees may also have

been subjected to the allegedly improper employment policy." *Tomkins v. Amedisys, Inc.*, 2014

WL 129407, at *2 (D. Conn. 2014) (quoting *Pippins v. KPMG, LLP*, 2012 WL 19379, at *6

(S.D.N.Y. 2012)). This "simple showing" requirement can be met by evidence that other

---

[8] While *Hoffman-La Roche* arose in the context of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(b), that act "incorporates enforcement provisions of the [FLSA], including § 216(b)," and, thus,

employees had similar "'job requirements'" and "'pay provisions.'" *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012) (quoting *Myers*, 624 F.3d at 555).

With these standards in mind, I have little difficulty concluding that plaintiff has met his "modest burden" of demonstrating that he and other Hoyt Limousine drivers are "similarly situated," warranting conditional collective action certification and notice. First, neither side disputes that, during the relevant time period in this litigation, *all* Hoyt Livery limousine drivers were subject to the same commission-based compensation policy: all drivers were paid 40% of the fee charged to the customer for each trip, and no driver was paid time-and-a-half if and when he worked more than 40 hours per week. Second, it is clear that all limousine drivers were subject to the same basic job duties and workplace policies. Third, I conclude—without making any ultimate determination regarding the merits of plaintiff's claim on a full factual record—that plaintiff has alleged a plausible FLSA violation by pleading the existence of a class of non-exempt employees who did not receive overtime pay for any hours worked in excess of 40 hours per week.

Defendants, however, raise several arguments against conditional collective action certification. First, defendants argue that the declarations submitted by plaintiff—those of Pierce, Dupee, and plaintiff himself—contain "conclusory statements" that do not provide evidence of a common scheme or plan to deny overtime pay. Doc. #29 at 9-10. I do not agree. In their declarations, all three former Hoyt Livery limousine drivers state that, during their employment at the company, they were paid on a "per trip" basis, and did not earn any overtime compensation for hours worked over 40 per week. Additionally, each of the declarants states that he has spoken to other full-time drivers, and that the other drivers stated that they have never received any overtime pay for hours worked beyond 40 per week. At this stage of the collective

---

*Hoffman-LaRoche*'s interpretation of § 216(b) is binding on this Court in FLSA cases. *Myers*, 624 F.3d at 555 n.9.

action certification process, these declarations—including the hearsay statements of other drivers contained therein—are probative evidence of a common scheme or plan. *See Fracasse v. People's United Bank*, 2013 WL 3049333, at *2 (D. Conn. 2013) (quoting *Zaniewski v. PRRC Inc.,* 848 F. Supp. 2d 213, 220 (D. Conn. 2012)) (noting that, "[u]nder the 'modest factual showing' standard, courts 'regularly rely on plaintiffs' affidavits and hearsay statements'"). In any event, I need not rely on these affidavits since defendants readily concede that all limousine drivers at Hoyt Livery had the same job duties and were compensated under the same commission-based system. *See* Doc. #29 at 3-7. While defendants argue that this compensation system did not violate the FLSA, that is not the relevant inquiry at this time. "The focus of this [conditional certification] inquiry . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their *allegations* that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (emphasis added).

Second, defendants argue that conditional collective action certification is inappropriate because there is considerable dispute regarding which activities are properly categorized as compensable "work time." Doc. #29 at 10-11, 15-16. More specifically, defendants argue that (1) the 40% per trip commission that Hoyt Limousine paid to its drivers fully compensated drivers for time in the vehicle without a passenger (*i.e.*, time spent "deadheading" or waiting less than an hour for a customer at an airport), and (2) other work-related driver activities, such as the requirements that limousine drivers clean their assigned limousine and check the limousine's tires and fluids, are not compensable under the *de minimis* doctrine, *see Singh v. City of New York*, 524 F.3d 361, 370 (2d Cir. 2008) (Sotomayor, J.) (noting that "[t]he *de minimis* doctrine permits employers to disregard, for purposes of the FLSA, otherwise compensable work [w]hen

9

the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours"). But these arguments are not relevant to the conditional collective action certification inquiry. "Indeed, at the conditional certification stage, 'the court does not resolve factual disputes [or] decide substantive issues on the merits . . . .'" *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 180 (D. Conn. 2010) (quoting *Lynch v. United Services Auto, Ass'n*, 491 F. Supp. 2d 357, 368-69 (S.D.N.Y. 2007)). Moreover, there is no indication that these issues could not adequately be resolved on a collective action-wide basis.

Third, defendants claim that plaintiff and potential opt-in plaintiffs cannot prove what hours they actually worked because plaintiff's "documentary submissions," which consist of copies of the daily trip tickets, weekly trip logs, and computer generated wage statements, do not reflect drivers' work hours and therefore cannot be utilized to demonstrate that any individual driver was denied overtime pay. Doc. #29 at 11-12. This argument again misapprehends the nature of the conditional collective action certification inquiry. At this stage, I do not consider whether plaintiff could sustain his burden of proof before the trier of fact. Rather, the only relevant issue is whether plaintiff and the potential opt-in plaintiffs are "similarly situated." The lack of Hoyt Livery records precisely demonstrating the hours worked by full-time limousine drivers is irrelevant to that inquiry.

To the extent that defendants argue that this evidence demonstrates that plaintiff and other drivers worked varying schedules and could be entitled to differing damages should they prevail on their claims, that issue goes to the individualized question of damages—not the common issue of liability. The fact that putative collective-action members performing similar work and subject to a common compensation policy may be owed different damages does not suggest that such individuals are not sufficiently similarly situated for FLSA purposes.

Fourth, defendants argue that the 12 boilerplate driver affidavits they have submitted cast doubt upon the existence of a putative class of plaintiffs that were denied overtime pay. *See* Doc. #29-2. But even these affidavits are suggestive of at least some overtime hours violations. Each of the 12 drivers states that, "*with perhaps some minor exceptions*," he does not "believe" that he has worked over 40 hours per week. *Id.* ¶ 7 (emphasis added). Additionally, each driver states that he does not consider time spent alone in a vehicle to be "'work' time," that he has "never witnessed any driver truly working 50 or more hours per week, and *seldom has [witnessed] any driver truly work[ing] more than 40 hours a week*." *Id.* ¶¶ 13, 15 (emphasis added). At the conditional certification stage, the Court does not weigh evidence or resolve factual disputes and, consequently, affidavits calling into some question plaintiff's factual claims are not controlling. *See Alli*, 2011 WL 4006691, at *5 (refusing to consider at the conditional certification stage declarations from defendants' current employees who "indicate[d] that they perform tasks and responsibilities that differ from those performed by the plaintiffs").

Nor is it relevant that the 12 drivers state that they are not interested in joining this action. Doc. #29-2, ¶ 16. "FLSA plaintiffs are not required to show that putative members of the collective action are interested in the lawsuit in order to obtain authorization for notice of the collective action to be sent to potential plaintiffs." *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 466 (S.D.N.Y. 2008). Similarly, the perceptions of the 12 drivers as to what activities should constitute "working time" are not relevant at this time.

Because it is undisputed that all full-time limousine drivers at Hoyt Livery had the same job duties and were subject to the same allegedly unlawful compensation policies, I conclude that plaintiff and potential opt-in plaintiffs are "similarly situated" for FLSA purposes and, accordingly, conditionally certify this case as a FLSA collective action. The collective group to

receive notice shall be comprised of all persons employed as full-time limousine drivers at Hoyt Livery in the three years prior to the Court's entry of this order.[9]

To facilitate notice of this collective action case and the right of eligible individuals to join as opt-in plaintiffs, I grant plaintiff's request for an order that defendants disclose to him a list of the names, last known mailing addresses, and last known email addresses of all individuals employed as full-time limousine drivers at Hoyt Livery in the past three years. Defendants are ordered to provide this information within 15 days. I deny plaintiff's request for an order requiring that defendants disclose the telephone numbers of potential opt-in plaintiffs. In view of the fact that eligible individuals will receive notification of this action via mail and email, plaintiffs have not demonstrated any particularized reason why disclosure of telephone numbers is also necessary. *See Alli*, 2011 WL 4006691, at *6 (denying plaintiffs' request for disclosure of telephone numbers of potential opt-in plaintiffs because plaintiffs showed "no need" for such information). Plaintiff may renew this request only if further information indicates that the disclosure of mailing addresses and email addresses is inadequate.

With respect to notice procedures, I approve plaintiff's proposed notice and consent-to-join forms absent objection. Plaintiff is authorized to send these forms by postal mail and email twice: an initial notice may be sent to all putative class members at the outset of the notice period, and then a second notice may be sent to any member of the collective group who has not opted in 30 days later. The notice period shall last 60 days. While plaintiff requests a longer notice period, I agree with defendants that 60 days is appropriate for a collective group of this

---

[9] This is the class of persons whose potential FLSA claims are not barred by the statute of limitations. *See* 29 U.S.C. § 255(a) (providing that a FLSA cause of action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued"). "[T]he statute of limitations applicable to a claim for unpaid minimum wages under FLSA runs, at most (namely, if a claim arises from a willful violation of the Act), from a date 'three years prior to

size and under circumstances where neither party has suggested that there will be unusual difficulties locating or contacting potential opt-in plaintiffs.

I deny plaintiff's request that Hoyt Livery be ordered to post a notice of the pendency of this collective action in its lunchroom. Plaintiff has cited no authority for requiring this intrusive method of notice and has not explained why the posting of a notice on Hoyt Livery's property is necessary to reach a class of people who will already be receiving multiple mailings and emails about their right to opt in to this case. And because I previously denied plaintiff's request for the disclosure of telephone numbers, I also deny plaintiff's request for authorization to contact potential opt-in plaintiffs by phone. Plaintiff is, however, authorized to contact potential opt-in plaintiffs via postal mail or email to discern whether they have received the notice and to remind them of the deadline to opt in.

### 2. *Motion for Rule 23 Class Certification of Plaintiff's CMWA Claim*

Like the FLSA, the CMWA—Connecticut's state wage and hour law—requires that employers provide overtime compensation to non-exempt employees for hours worked in excess of 40 per week. Conn. Gen. Stat. § 31-76c.[10] But, unlike the FLSA, the CMWA contains no independent "collective action" joinder mechanism. Accordingly, plaintiff moves to have his CMWA claim certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff proposes that the class consist of "[a]ll persons who have worked for Defendant Hoyt Livery, Inc. as full-time limousine drivers at any time between October 18, 2011 and the date of final judgment in this matter." Doc. #22 at 1. Defendants oppose this motion, arguing that plaintiff has failed to

the date each opt-in plaintiff filed a written consent to join the action.'" *O'Jeda v. Viacom, Inc.*, 2014 WL 1344604, at *2 n.1 (S.D.N.Y. 2014) (quoting *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 388 (E.D.N.Y. 2010)).

[10] Connecticut General Statutes § 31-76c provides: "No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

satisfy the requirements of Rule 23.

Because this class action has been brought pursuant to Rule 23(b)(3), the requirements of

Rule 23(a) and Rule 23(b)(3) must be satisfied. Rule 23(a) provides that

> (a)    One or more members of a class may sue or be sued as representative
>         parties on behalf of all members only if:
>     (1)    the class is so numerous that joinder of all members is
>            impracticable;
>     (2)    there are questions of law or fact common to the class;
>     (3)    the claims or defenses of the representative parties are typical of
>            the claims or defenses of the class; and
>     (4)    the representative parties will fairly and adequately protect the
>            interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). In addition, "[a] class action may be maintained if Rule 23(a) is

satisfied and if: . . . (3) the court finds that questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b). A plaintiff must satisfy these six Rule 23 requirements—numerosity,

commonality, typicality, adequacy, predominance, and superiority—by a preponderance of the

evidence. *Myers*, 624 F.3d at 547.

District courts in this Circuit regularly certify class actions based on state law labor

claims, including denial of overtime claims, when these requirements are satisfied. *See, e.g.*,

*Shahriar*, 659 F.3d at 250-53 (affirming district court order certifying class action based on

alleged violations of state labor laws); *Perkins*, 669 F. Supp. 2d at 222-25 (certifying class action

based on alleged violations of CMWA overtime provisions); *Scott v. Aetna Servs., Inc.*, 210

F.R.D. 261 (D. Conn. 2002) (certifying class action based on alleged violations of CMWA

overtime provisions); *Lewis v. Alert Ambulette Serv. Corp.*, 2012 WL 170049 (E.D.N.Y. 2012)

(certifying class action based on state law overtime, minimum wage, spread-of-hours, and

unlawful deductions claims); *Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) (granting in part plaintiffs' motion for class certification of state labor law claims). And "where a collective action under the FLSA that is based on the same facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006) (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001)). With these standards in mind, I now turn to an analysis of each of the six requirements for class actions brought pursuant to Rule 23(b)(3).

First, as to the mandate that the class members be sufficiently numerous, it is clear that this does not require "that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). The evidence here indicates that the putative class—all persons employed as full-time limousine drivers at Hoyt Livery during a three-year period—will have about 80 members. In view of Second Circuit precedent holding that numerosity is presumed where a putative class has 40 or more members*, Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), this proposed class easily satisfies the numerosity requirement.

Second, plaintiff must demonstrate the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality prerequisite requires a showing that the claims for which certification is sought "depend upon a common contention . . . [that is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 2541, 2551 (2011). But commonality does

not mandate that all factual and legal questions be identical; to the contrary, just "a single [common] question" will suffice to satisfy the requirement. *Id.* at 2556 (alteration in original) (citations and internal quotation marks omitted).

I conclude that plaintiff has satisfied this standard. The central dispute in this case is this: plaintiff claims that defendants' compensation policy violated the CMWA, while defendants vigorously deny that claim. But what is not disputed (and could not be disputed in view of defendants' concessions and ample record evidence) is that all members of the putative class were subject to a uniform compensation policy. It is the legality or illegality of that unvarying policy that provides the unifying thread to satisfy the commonality requirement of Rule 23(a)(2). Other issues—how many hours a driver worked, how many trips a driver took, how each driver will prove the amount of damages (if any) to which he is entitled—may well require individualized inquiries. This does not, however, transform plaintiff's single fact-based theory of liability—the alleged illegality of an undisputed uniform compensation policy—into a series of individualized claims. It merely means that various class members may be entitled to differing damages (or no damages at all) if plaintiff prevails.[11]

Third, the typicality requirement of Rule 23(a)(3) is satisfied when "the claims of the class representatives [are] typical of those of the class, and . . . each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendants' liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citations and internal quotation marks omitted). The Supreme Court has noted that the typicality requirement tends to merge with the commonality requirement. *See, e.g., Dukes*, 131 S. Ct. at 2551 n.5.

---

[11] Curiously, defendants claim that the commonality requirement cannot be satisfied due to the lack of evidence that any drivers actually ever worked more than 40 hours in a given week. Doc. #29 at 21. But, as described above, the record plausibly suffices at this time to show that multiple drivers worked more than 40 hours per week.

Indeed, much like commonality, typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (citations and internal quotation marks omitted). In the denial-of-overtime-pay context, typicality is usually satisfied where the particular claims alleged by the named plaintiff and the claims that could be asserted by members of the putative class are "similar" and "arise from the same allegedly unlawful practices and policies." *Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 128 (S.D.N.Y. 2011).

Here, the disputed issue that is central to the claims of plaintiff and all other putative class members is the alleged unlawfulness of Hoyt Livery's uniform compensation policy. Defendants have not established any factual or legal defenses to this claim that are applicable to plaintiff but atypical of the putative class. Defendants' only argument against a finding of typicality is the fact that each class member "will have individualized information concerning the issue of whether or not they in fact ever worked more than 40 hours a week, and how to determine which weeks that may have occurred . . . ." Doc. #29 at 22. But because "differences in damages will not destroy typicality," 5 Moore's Federal Practice § 23.24[5], this argument is without merit. *See also Espinoza*, 280 F.R.D. at 128 ("Typicality is satisfied despite differences in damages arising from a disparity in injuries among the class members."). Plaintiff has satisfied the typicality requirement.

Fourth, I find that the adequacy prerequisite of Rule 23(a)(4) has been satisfied. This requirement is met where (1) class counsel is "qualified, experienced, and able to conduct the litigation" and (2) plaintiff has no "interests . . . antagonistic to the interest of other members of

the class." *Baffa v. Donaldson, Lufkin, & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Defendants do not contest the adequacy of class counsel, and I find that this first prong has been satisfied because plaintiff's attorneys have shown that they are qualified to handle the case.[12]

Defendants, however, dispute adequacy on grounds that the employment and earnings prospects of some potential class members may be adversely affected if this action goes forward. Defendants point to the driver affidavits, in which 12 current Hoyt Livery limousine drivers state that they "disagree" with plaintiff's claim and that they "do not believe that [plaintiff] or any other driver who is claiming overtime will adequately protect [their] interests" because "[i]f the definition of what 'work' consists of is too broad, then the drivers will face the risk of being cut off from further trips during a week when they have worked 40 hours." Doc. #29-2 ¶¶ 3, 12. While I am sympathetic to the drivers' desires to work as many hours as possible and earn as much pay as possible, I fail to see how the fact that some drivers are happy with defendants' current compensation policy creates a conflict between plaintiff and putative class members. If defendants' compensation policy proves to be illegal, it is of no moment that some employees happen to like it.

Defendants also claim that the second adequacy prong is not satisfied because plaintiff is an inadequate class representative. Defendants note that, in his deposition, plaintiff testified that he does not know whether and in which weeks other drivers worked more than 40 hours. To be sure, the Second Circuit has held that class representative status is "properly . . . denied 'where the class representatives have so little knowledge of and involvement in the class action that they

---

[12] "In determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance." *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 268 (S.D.N.Y. 2007), amended (Aug. 16, 2007) (quoting *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 171 (S.D.N.Y. 1997)). In addition to their experience with class action cases involving wage and hour

would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" *Baffa*, 222 F.3d at 61 (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995)). But that is clearly not the situation here. Plaintiff was an employee at Hoyt Livery for several years and has ample knowledge of the company's workplace practices and compensation policies. Moreover, his willingness to sit for a deposition and participate in discovery indicates his ongoing involvement in the case. Plaintiff is an appropriate class representative, and the adequacy requirement has been satisfied.

The fifth requirement, predominance, has also been satisfied. This prerequisite is met "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Myers*, 624 F.3d at 547 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). While the predominance requirement is "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a)(2), *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 623-24 (1997), the existence of some individualized issues that are not "susceptible to classwide proof" is permissible so long as "common questions *predominate* over any questions affecting only individual class members," *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1196 (2013) (citations and internal quotation marks omitted).

Predominance is often satisfied in wage and hour cases because liability is usually a common issue, and the only individualized questions involve damages calculations. Because wage claims often turn on uniform policies and practices, "numerous courts have found that [such] claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due." *Ramos v.*

claims, plaintiff's attorneys to date have demonstrated competence and skill while litigating this case.

*SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011) (internal quotation marks omitted) (citing cases).

For example, in *Shahriar*, 659 F.3d at 253, the Second Circuit found ample support for a district court's finding that the predominance requirement was satisfied in a class action challenging the legality of an employer's tip practices. The court of appeals noted that "[p]laintiffs have alleged that all servers were subject to [the employer's] uniform tip-sharing or tip-pooling system. . . . [The employer] has not denied that all servers were subject to its uniform tip practices, and [p]laintiffs support the allegation that all class plaintiffs were subject to the same uniform tip practices with [documentary evidence]." *Id.* These liability issues predominated over "individualized damages issues." *Id.* By contrast, in cases where liability issues are subject to individualized issues and individualized proof, courts are less likely to find that the predominance prerequisite has been satisfied. For example, in *Myers*, 624 F.3d at 548–51, the court of appeals affirmed a district court's finding that the predominance requirement had not been satisfied in a denial-of-overtime-pay case due to the lack of convincing evidence that the putative class of managers (all of whom the employer had classified as exempt employees) had materially consistent job duties.

The circumstances here are much closer to those in *Shahriar* than those in *Myers*. It is undisputed that all full-time limousine drivers at Hoyt Livery had the same job duties and were compensated pursuant to the same pay plan. The legality or illegality of this plan is the central liability issue in the case, and the evidence necessary to demonstrate liability will be common to all class members.

Nonetheless, defendants argue that plaintiff has not satisfied the predominance standard due to a number of "subsidiary issues" not susceptible to classwide proof. Doc. #29 at 25. Most

notably, they claim that individual inquiries will be necessary to determine which activities ("deadheading", a first hour waiting at an airport, maintaining an assigned vehicle, *etc.*) constitute compensable work time, and they claim that determining a method for calculating the hours worked for each driver will be a "monumental and fact sensitive inquiry for each driver of the potential class." *Id.* I do not agree. To the contrary, it seems to me that these issues are best resolved on a classwide basis. Once it is determined which types of activities are compensable and how to calculate the hours for which a driver should have been compensated, damages for each driver will be a mere question of "arithmetical calculations based on . . . records and other documentary evidence." *See Ramirez v. Riverbay Corp.*, __ F. Supp. 2d __, 2014 WL 3800886, at *10 (S.D.N.Y. 2014).

I also recognize that the damages inquiry could prove challenging in this case due to defendants' failure to keep hourly time records of its drivers. But there is no indication that any driver would use some particular kind of evidence specific only to him or her in order to prove what hours they worked. Even if some drivers do attempt to use unique evidence (such as an affidavit attesting to hours he or she personally worked) to prove damages, there is no indication that these individualized damages inquiries would predominate over generalized liability issues affecting the whole class. The predominance requirement is satisfied.

Sixth and finally, I find that the superiority requirement is satisfied because a class action is the best method for adjudicating this controversy. "[T]he Supreme Court has [recognized that] Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (citing *Amchem Prods, Inc.*, 521 U.S. at 617), *cert denied,* __ U.S.__, 134 S.Ct. 1938 (2014). Such is the case here, because

the relatively modest damages that might be recovered by any single driver would likely make the cost of individual litigation prohibitive.[13]

I also believe that class members who still work at Hoyt Livery might be reluctant to bring claims on their own in fear of retaliation by their employer. *See Scott*, 210 F.R.D. at 268 (superiority requirement satisfied in CMWA denial-of-overtime case because "class members may fear reprisal and would not be inclined to pursue individual claims"). This is not to say that I believe that defendants are engaging in or would engage in any retaliatory conduct. But the power differential between an employer and an employee is undeniable, and any employee would be reluctant to bring a lawsuit against the entity that continues to pay his or her salary. For these and other reasons, I am convinced that resolving this dispute as a class action will be better than litigating the same core common issues in a flurry of individual cases.

Because the requirements of Rule 23(a) and (b)(3) are satisfied, plaintiff's motion for class certification is granted. This Court certifies a class consisting of the following individuals: *All persons who have worked for Defendant Hoyt Livery, Inc. as full-time limousine drivers at any time between October 18, 2011 and the date of final judgment in this matter*. Plaintiff is appointed as class representative. Plaintiff's lawyers are appointed as class counsel. Plaintiff's proposed notice and opt-out forms are approved absent objection, except that plaintiff shall modify the notice as follows: (1) the docket number on pages 1 and 3 should read "3:13-cv-01529-JAM"; (2) the name "Ocean State" on page 2 should be changed to "Hoyt"; and (3) the order shall reflect that it was signed by me, and not by Judge Shea (who formerly presided over this case). Within the next 15 days, defendants are ordered to disclose to plaintiff the names of all persons who have been employed as full-time limousine drivers at Hoyt Livery since October

---

[13] At oral argument, plaintiff's counsel estimated that plaintiff's individual damages are likely to be around $17,000. Counsel also represented that Pierce's damages are likely to be "substantially lower" than this sum, while

18, 2011, as well as the last known mailing addresses and email addresses of these individuals.[14]

Plaintiff shall send the notice and opt-out forms to class members via postal mail and email at the

outset of the "opt-out" period. This period shall last 60 days, and run coextensively with the

FLSA "opt-in" notice period.

**Conclusion**

For the reasons and to the extent set forth above, I **GRANT** plaintiff's motions for

conditional certification of a FLSA collective action and certification of a Rule 23 class action.

Defendants shall disclose to plaintiff the names and contact information for potential FLSA opt-

in plaintiffs and Rule 23 class members within **15 days**. The notice period—that is, the period

during which individuals may "opt in" to the FLSA collective action or "opt out" of the Rule 23

class action—shall begin on **October 2, 2014**, and conclude on **December 2, 2014**.

It is so ordered.

Dated at Bridgeport this 17th day of September 2014.


/s/ Jeffrey Alker Meyer_____
Jeffrey Alker Meyer
United States District Judge

---

Dupee's damages are likely "slightly higher." Though not insignificant, these damages are fairly small.

[14] These individuals will be mostly the same people that defendants must disclose to plaintiff in connection with the FLSA collective group. The only difference between that group and this one is that FLSA "opt-in" notice should go to those people who worked for Hoyt Livery as full-time limousine drivers in the three years prior to today's date, while Rule 23 "opt-out" notice should be sent to all those worked for Hoyt Livery as full-time limousine drivers since October 18, 2011. These dates are only about a month apart, and so the lists are likely to heavily overlap. Accordingly, defendants may produce a single list that contains names and contact information for both groups. If defendants chose to submit one list, they shall note on that list whether each individual is a potential opt-in plaintiff in the FLSA collective group, a member of the Rule 23 class, or a member of both groups.