UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROGER LASSEN, JR., *individually and on behalf of all other similarly situated individuals*,<br>         Plaintiff,<br><br>         v.<br><br>HOYT LIVERY, INC., SANTO SILVESTRO, and LYNDA SILVESTRO,<br>         Defendants. | Case No. 3:13-cv-01529 (VAB) |

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Roger Lassen, Jr., brought this action on behalf of himself and other similarly situated individuals against Defendants, Hoyt Livery, Inc., Santo Silvestro, and Lynda Silvestro, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58, *et seq.* The Complaint [Doc. No. 1] asserts claims under three counts: (1) a collective action claim under 29 U.S.C. § 216(b) for violation of the overtime provisions of the FLSA ("Count One"); (2) a class action claim for violation of the overtime provisions of the CMWA ("Count Two"); and (3) a class action claim for illegal deductions in violation of Conn. Gen. Stat. § 31-71e ("Count Three").

On September 17, 2014, the Court conditionally certified a collective action under § 216(b) of the FLSA and a class action under Rule 23 for the CMWA claims.[1]  Doc. No. 43. Plaintiffs now move for partial summary judgment on the issue of Defendants' liability on Counts One and Two of the Complaint.  For the reasons stated below, the motion is GRANTED.

---

[1] Plaintiff's counsel represented to the Court that an amended complaint would be filed removing Count Three shortly after a ruling on the collective action and class action motions.  Although no such amended complaint has been filed to date, the Court assumes that Plaintiff's counsel will file the promised amended complaint upon entry of this Ruling.

I.     **Factual Background**[2]

For nearly three years, plaintiff Roger Lassen, Jr., worked as a limousine driver for defendant Hoyt Livery, Inc. ("Hoyt Livery" or "the company"), a Connecticut company owned by defendants Santo Silvestro and Lynda Silvestro that provides transportation services to individuals in the state and surrounding areas, including the New York metropolitan area.  *See*, *e.g.*, Doc. Nos. 65 ¶ 1, 65-7 ¶¶ 4-5.  Santo Silvestro serves as president and treasurer of the company, while Lynda Silvestro is secretary, vice president, and chief financial officer and is responsible for overseeing human resources.  *See*, *e.g.*, Doc. Nos. 65 ¶¶ 4-5, 65-7 ¶ 3, 21-5, at 6. Both the Silvestros are responsible for determining the rate and method of payment to Hoyt Livery's limousine drivers, and for ensuring the company's compliance with state and federal wage and hour laws.  *See*, *e.g.*, Doc. No. 65 ¶¶ 9, 13

Plaintiff Lassen and all other limousine drivers at Hoyt Livery were paid in accordance with a commission-based system.  *See*, *e.g.*, Doc. No. 21-4, at 18-19.  Under this system, limousine drivers were assigned by a dispatcher to work trips requested by customers, and the assigned driver would earn 40% of whatever fee was charged to the customer for the requested trip.  That 40% figure included two components: 25% was designated as a "commission," while 15% was designated as a "built-in gratuity."[3]  Hoyt Livery requires its full-time drivers to be available six days a week.  *See*, *e.g.*, Doc. Nos. 42-2 ¶ 3, 42-4 ¶ 13.

Hoyt Livery further requires its full-time drivers to perform certain activities for which they receive no additional compensation beyond the 40% commission.  For example, Hoyt Livery provides customers with one "free" hour of wait time for pick-up at an airport, for which drivers do not receive any compensation.  Nor does the company provide any additional

---

[2] These basic facts are undisputed.
[3] For the sake of brevity, the 25% commission and 15% built-in gratuity will be hereinafter collectively referred to as "the 40% commission."

compensation to drivers for time spent driving to a pick-up location without a customer in the vehicle.  Additionally, drivers are expected to maintain their assigned company vehicle, bring company vehicles assigned to them in for service, check their vehicle's fluids, wash and wax their vehicle, take the vehicle to an auto body shop if necessary, bring the vehicle to an auto repair shop for regular oil changes and transmission service, and rotate the vehicle's tires—all without additional compensation.  *See*, *e.g.*, Doc. No. 21-4, at 21-29.

Limousine drivers at Hoyt Livery are required to maintain daily trip tickets and weekly trip logs in order to be paid.  The daily trip tickets include information about the customer's name and destination, as well as the price that the customer is charged and the driver's mileage on each trip.  The weekly trip logs indicate the date, place of pick-up and drop-off, and the mileage of the round trip, among other information.  Hoyt Livery also uses a computer software system to track trips made by its drivers and to calculate the commission earned by each driver. While the software system has an option to track the hours worked by drivers, defendants did not utilize that feature.  Until July 2013, Hoyt Livery did not maintain any hourly time records for its limousine drivers.  *See*, *e.g.*, Doc. Nos. 21-5, at 12-21, 65-3, at 6.

In addition, Hoyt Livery's drivers did not receive more money if they worked more than forty hours in a week.  Drivers earned the same "flat rate" 40% commission per trip no matter how many hours they had worked or trips they had taken in a week.  *See*, *e.g.*, Doc. No. 21-4, at 30.  However, that policy has changed and, at present, Defendants do pay their drivers "[o]ne and a half times their weekly commission" when they work more than forty hours in a workweek. *See*, *e.g.*, Doc. No. 42-10, at 5.

## II.      Standard of Review

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 172 (2d Cir. 2005).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." *Id.*  Only those facts that must be decided in order to resolve a claim or defense will

prevent summary judgment from being granted.  Immaterial or minor facts will not prevent summary judgment.  *See Howard v. Gleason Corp.*, 901 F. 2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  However, the inferences drawn in favor of the nonmovant must be supported by evidence.  "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment, *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir. 1997), as is the "mere existence of a scintilla of evidence in support of the [nonmovant's] position," *Liberty Lobby*, 477 U.S. at 252.

**III.    Discussion**

      **A.    Applicable Law**

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Similarly, under the CMWA, "[n]o employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  Conn. Gen. Stat. § 31-76c.  The Connecticut Supreme Court has indicated that, in interpreting the CMWA, federal precedent interpreting analogous provisions of the FLSA can be used.  *Roto-Rooter Servs. Co. v. Dep't of Labor*, 219 Conn. 520, 528 n.8 (Conn. 1991).

**B.      Liability**

Plaintiffs argue that there is no genuine issue of material fact to be tried with respect to the issue of Defendants' liability under the FLSA and CMWA overtime provisions.  Defendants have not argued that Plaintiffs are exempt employees under the FLSA or the CMWA or disputed that Plaintiffs were their "employees" and they were Plaintiffs' "employers."  As a result, Plaintiffs were entitled to receive overtime compensation if they worked more than forty hours in any workweek.  Thus, the only question is whether the evidence shows, drawing all reasonable inferences in favor of Defendants, that any plaintiff worked more than forty hours in any workweek during the relevant period.

**1.      Burden Shifting**

While an employee who sues for unpaid overtime compensation under the FLSA bears the burden of proving that he performed work for which he was not properly compensated, "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).  The FLSA requires employers to maintain accurate records of the hours and wages of their employees.  29 U.S.C § 211(c).  In situations where an employer's records are inaccurate or inadequate, "an employee has carried out his burden . . . if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Mt. Clemens Pottery*, 328 U.S. at 687.  "As courts have found, a plaintiff can meet this burden by relying on recollection alone."  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 380 (E.D.N.Y. 2012) (internal quotation marks and citations omitted); *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden

through estimates based on his own recollection.").  Furthermore, "[i]n meeting the burden under *Mt. Clemens*, [plaintiff] need not present testimony from each underpaid employee; rather, it is well-established that [plaintiff] may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA."  *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997).

"The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  *Mt. Clemens Pottery*, 328 U.S. at 687-88.  *See also S. New England Telecomms.*, 121 F.3d at 69 ("Upon meeting this evidentiary threshold, the fact of damage is established, and the only potential uncertainty is in the amount."); *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 240-41 (Conn. 2003) (applying the *Mt. Clemens Pottery* analysis for claims under the CMWA "because any uncertainty in the damages amount is the fault of the employer").

Plaintiffs have produced record evidence indicating that at least some of the drivers worked more than forty hours in a single workweek on some occasions.  Four drivers have testified that they worked some overtime.  *See*, *e.g.*, Doc. No. 42-2 ¶ 3 ("I usually worked between 40 and 50 hours per week"); Doc. No. 42-4 ¶ 2 ("I usually worked between 50 and 60 hours per week"); Doc. No. 42-6 ¶ 5 ("During the time I was employed by Hoyt as a limousine driver, I worked an average of at least 50 to 60 hours per week."); Doc. No. 21-8 ¶ 3 ("As a full-time driver, I regularly worked at least 50 hours per week, and frequently worked more than 60 hours per week").  Three of these drivers also averred that they spoke to other full-time drivers

who told them that they "never received any overtime premium pay for hours worked beyond 40 in one week."  *See* Doc. Nos. 42-2 ¶ 10, 42-4 ¶ 12, 21-8 ¶ 13.

Several drivers have described "how they spent their time while working for Defendants" and how they came up with their estimated hours worked each week based "on various documents that were maintained by Defendants."  Doc. No. 42, at 12-13.  For example, Jeffrey Capone reconstructed his estimate of 50 to 60 hours worked on average per week by reviewing records based on his knowledge and experience of how long the various routine trips would take.  *See* Doc. No. 42-6 ¶¶ 6-11.  Mr. Lassen explained that the trip tickets included the pick-up times for each job, and by looking at the trip tickets, the weekly job records, and the driver payment details maintained by Defendants, he was able to give an estimate as to how much time a particular job took, and that looking at the documents that show all of the runs together, he was then able to give a reasonable estimate as to how much time he worked in a given week.  Doc. No. 29-7, at 72-73.  Murphy Pierce also came up with his estimated hours worked based on his years of experience, which provided him with an understanding of approximately how long each trip would take on average.  *See* Doc. No. 65-4, at 24.

Mr. Capone averred that "a typical run for Hoyt's limousine drivers takes approximately three hours from the time they leave with the car to go to the customer's house until the time they reach their ultimate destination in the car."  Doc. No. 42-6 ¶ 10.  Burton Dupee stated similarly that an average run to the airport was "three hours, round figures, with not much traffic."  Doc. No. 42-12, at 12.  Mr. Dupee further stated that, on an average day, he would have three jobs, "one in the morning and then two in the afternoon . . . [and] sometimes four, but that was rare," and that on an average day he would easily work nine hours.  Doc. No. 42-12, at 11-12.

Defendants challenge the sufficiency of this evidence on the issue of liability at summary judgment. They point out that the Eighth Circuit rejected an FLSA plaintiff's claim that he had worked over forty hours per week because he "put forth contradictory and bare assertions of his overtime hours worked," "failed to specifically account for the hours worked," "failed to put forth any evidence regarding specific weeks where he worked beyond forty hours," "failed to provide a meaningful explanation of how he arrived at his final estimate of sixty hours a week, every week, of his employment," "provided only vague testimony and failed to reference specific days and hours worked," and failed "to check his hours worked against any business records kept by" his employer. *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059-60 (8th Cir. 2014).

The Second Circuit, however, has held that a plaintiff's declaration that he worked more than forty hours "just about every week" and "averaged from one to five hours of uncompensated overtime every week," was sufficient "for a reasonable jury to conclude that he has shown the amount of his uncompensated work 'as a matter of just and reasonable inference.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 356, 364 (2d Cir. 2011) (quoting *Mt. Clemens Pottery*, 328 U.S. at 687) (reasoning that "[w]hile this evidence is not precise, [plaintiff's] burden under [*Mt. Clemens Pottery*] is . . . not onerous"). In light of the fact that Defendants did not maintain accurate time records, Plaintiffs have produced sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference, and thus shifted the *Mt. Clemens* burden to Defendants.

To their credit, Defendants have admitted that there were some drivers who worked more than forty hours in a workweek on some occasions and were not compensated with overtime pay. Defendant Santo Silvestro testified that "I'm sure there's some of them, you know, that are" performing services for Hoyt Livery for more than forty hours in a week, and he further admitted

that these drivers did not get paid overtime when that happened.  Doc. No. 42-8, at 9.  Similarly, Lynda Silvestro testified that "in the vast majority of workweeks, [each Plaintiff] worked less than 40 hours," Doc. No. 65-9 ¶¶ 4-6, implying that, in some weeks, they worked more than forty hours.

Moreover, Defendants have not produced any documentation that none of the drivers worked more than forty hours in a workweek.  While there were a dozen affidavits submitted by other drivers, attesting that "seldom has any driver truly worked more than 40 hours a week," Doc. No. 65-8, *passim*, these claims support rather than undermine the evidence that there was uncompensated overtime.  Just as importantly, these affidavits are no substitute for the detailed time records that Defendants conceded were not maintained until recently.  As the Second Circuit recognized in *Estrella v. P.R. Painting Corp.*, evidence "supporting at most a conclusion that *some* of the overtime hours" claimed by plaintiffs for damages were invalid "is not enough to survive summary judgment on the issue of liability: If [defendant] failed to compensate [plaintiffs] properly for even one hour of overtime, liability is established.  Anything else relates only to damages[.]"  356 F. App'x 495, 497 (2d Cir. 2009).

## 2.      Compensable Work

"[T]he basic principle that underlies the FLSA" is that "[e]mployees are entitled to compensation only for 'work.'"  *Reich v. New York City Transit Auth.*, 45 F.3d 646, 651 (2d Cir. 1995).  Generally, "an activity constitutes 'work' (compensable under the FLSA) if it involves 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business'" or "despite absence of exertion, where, for example, employees have been required to stand by and wait for the employer's benefit."  *Id.* (citations omitted).

Defendants argue that many of the hours included in Plaintiffs' reported weekly totals are not compensable "work" time under the FLSA and CMWA, and therefore a genuine issue of fact remains as to whether the total number of compensable hours exceeded forty in any given week without counting those hours, thus precluding summary judgment on the issue of liability. Specifically, Defendants argue that (1) the time drivers spent traveling to their first passenger pick-up of the day (also known as "deadheading," *see* Doc. No. 21-4, at 26, 29) and (2) the time they spent waiting between scheduled assignments during the workday should not be counted towards the overtime hours requirement.  The Court disagrees and concludes that these hours constitute compensable work time under the FLSA and CMWA, and should be counted towards the forty-hour workweek limit.

### a.    "Commuting" Time

"[T]he FLSA does not treat ordinary home-to-job-site travel as compensable."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 360 (2d Cir. 2011).  Section 4(a) of the Portal-to-Portal Act, which amended the FLSA to exempt time spent "traveling to and from the actual place of performance of the principal activity or activities" of employment and any "activities which are preliminary to or postliminary to said principal activity or activities,"  29 U.S.C. § 254(a), established this principle.  Certain activities are not part of an employee's compensable work, and therefore any time the employee spent on those activities would not be included in the workweek hours calculation for purposes of entitlement to overtime pay.

The Portal-to-Portal Act, however, does not change earlier definitions of compensable work. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005).  Any time spent on the "principal activity or activities" of employment are still compensable and must be counted for purposes of workweek hours calculations.  Further, activities "are compensable under the portal-to-portal

provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded[.]" *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). "The Supreme Court has interpreted this provision [of the FLSA] to mean that 'any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity." ' " *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008) (quoting *IBP*, 546 U.S. at 37); *see also Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 517 (2014) ("This Court has consistently interpreted the term principal activity or activities to embrace all activities which are an integral and indispensable part of the principal activities.") (internal quotation marks and citations omitted).

An activity is "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* This approach is consistent with the Department of Labor's regulation. *Id.* at 518 (citing 29 CFR §§ 790.8(b), 790.8(c)). Time spent by an employee on a certain task is compensable if he could not perform his principal activities without engaging in that task but would not be compensable if the task were "merely a convenience to the employee and not directly related to his principal activities." *Id.*

Defendants argue that the Portal-to-Portal Act exempts the time drivers spent traveling from their homes to pick up their first passengers of the day. The principal activity of their drivers, however, is to pick up passengers and transport them to their requested destinations. It is "integral and indispensable" to that activity for a driver to drive to the location where the passenger awaits this service. If commuting is traveling to the actual place of performance of the principal activity of employment, Plaintiffs' commute is the time they spend walking to their

Hoyt Livery car in order to begin driving to their first passenger of the workday.  *See* 29 C.F.R. 790.7(c) ("The statutory language and the legislative history indicate that the '. . . traveling' to which section 4(a) refers is that which occurs . . . in the course of an employee's ordinary daily trips between his home or lodging and the actual place where he does what he is employed to do.").  The car is "the actual place where he does what he is employed to do."  *See Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302, 1322 (S.D. Fla. 2007) (holding that time spent by limousine drivers driving from one job to another "is not excludable under the Portal-to-Portal Act" and "is compensable as a matter of law"); 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.").

Furthermore, in determining whether travel time is compensable under the FLSA, "courts consider whether the time is spent predominantly for the employer's benefit or for the employee's[.]"  *Sarrazin v. Coastal, Inc.*, 311 Conn. 581, 598 (Conn. 2014) (internal quotation marks and citation omitted).  The record evidence shows that it would be "cost prohibitive" and "[f]iscally irresponsible" for Hoyt Livery to own or lease parking lots to store all its vehicles overnight.  Doc. No. 86-1, at 3-4.  Thus, this travel was predominantly for the employer's benefit and was compensable time.

### b.    Waiting Time

#### i.    Between Assignments

Defendants also argue that the waiting time a driver spends after completing one assignment and before commencing the next assignment is not compensable because there is a genuine issue of fact whether Plaintiffs were able to effectively use that time for personal affairs. Doc. No. 66, at 16.  The Court disagrees and finds this time to be compensable.

The Supreme Court long ago established that "no principle of law . . . precludes waiting time from also being working time," and that an employee who is "engaged to wait" must be compensated, even though an employee "wait[ing] to be engaged" need not. *Skidmore v Swift & Co.*, 323 U.S. 134, 136-37 (1944); *see also Armour & Co. v Wantock*, 323 U.S. 126, 133 (1944) (noting that "an employer, if he chooses, may hire a man . . . to do nothing but wait for something to happen" and "[r]eadiness to serve may be hired, quite as much as service itself"). Time spent waiting for work is compensable if it is spent "primarily for the benefit of the employer and [its] business." *Armour*, 323 U.S. at 132-34.

"Whether waiting time is time worked under the [FLSA] depends upon the particular circumstances," such as the "nature of the service, and its relation to the waiting time." 29 C.F.R. § 785.14 (citing *Skidmore*, 323 U.S. at 137). The district judge is "responsible for determining as a matter of law whether plaintiff's activities could potentially constitute 'work.'" *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 521 (2d Cir. 1998). For example, when periods of inactivity are "unpredictable" and "usually of short duration," and the employee "is unable to use the time effectively for his own purposes," then the employee is "engaged to wait," and the inactive time constitutes "work" time under FLSA—even if "the employee is allowed to leave the premises or the job site during such periods of inactivity." 29 C.F.R. § 785.15. Furthermore, the FLSA "does not exclude as working time periods contracted for and spent on duty . . . merely because the nature of the duty left time hanging heavy on the employees' hands and because the employer and employee cooperated in trying to make the confinement and idleness incident to it more tolerable." *Armour*, 323 U.S. at 134; *see also Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002) ("Even if [plaintiff] did spend some time during the evenings

socializing in the [workplace] while waiting for assignments, that is not sufficient to render that waiting time noncompensable.").

Ordinary waiting time between runs is compensable time. The relevant inquiry is not whether plaintiffs' duties prevented them from engaging in any and all personal activities during waiting time; rather it is whether the time is spent predominantly for the employer's benefit or the employee's. *Armour*, 323 U.S. at 133; *see also id.* at 132-34 (holding as compensable "time spent in playing cards and other amusements, or in idleness" while engaged to wait); *Moon*, 248 F. Supp. 2d at 230 (holding as compensable time spent socializing while engaged to wait); *Donovan v. 75 Truck Stop, Inc.*, No. 80-9-CIV-OC, 1981 WL 2333, at *12, 1981 U.S. Dist. LEXIS 15449, *30-31 (M.D. Fla. July 20, 1981) (holding that even if truck washers had been permitted "to go across the street to go swimming at the Days Inn, this would not have been sufficient to relieve the employer from his responsibility to compensate them during such periods . . . because the employees were expected to be available to commence work immediately upon arrival of a truck"). Furthermore, the question of "whose benefit predominated" is a binary inquiry, and this Court is aware of "no authority for the proposition that a court must determine whose benefit predominated during each" moment of the waiting period. *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1135 (10th Cir. 2000).

The record evidence in this case shows that, while waiting between assignments, limousine drivers must "stay in proximity to the vehicle," Doc. No. 65-5, at 11, "stay dressed" in uniform, Doc. No. 65-3, at 12, and be ready to take on an unexpected new assignment in the interim or otherwise risk losing the assignment they were already waiting for, *id.* at 13. In addition, such drivers are not typically allowed to "use the vehicle for personal use," Doc. No.

65-5, at 13.  Under such conditions, a driver could not use the waiting time "effectively for his own purposes."[4]  29 C.F.R. § 785.15.

For example, Defendants argue that if a driver drove from New Canaan to John F. Kennedy International Airport ("JFK") to drop off a customer at 9:00 a.m., and his next assignment was to pick up a different customer from JFK at 12:00 p.m. and return to the New Canaan area, the three-hour window between the two trips would not be compensable work time. As the uncontradicted record evidence reflects, however, taking someone to JFK typically takes two hours, and "coming out of JFK in the morning, it's anywhere from two to three hours."  Doc. No. 65-3, at 9.  As a result, this driver is significantly constrained in how he or she may use his or her waiting time and is thus unable to use this time effectively for his or her own purposes. Thus, this waiting time properly should be considered compensable time.

### ii.      Waiting for Passengers

Time spent by Plaintiffs while waiting for passengers, even those who cancel, is compensable time.  The FLSA's continuous workday rule defines "workday" as generally "the period between the commencement and completion on the same workday of an employee's principal activity or activities," including "all time within that period whether or not the employee engages in work throughout all of that period."  29 C.F.R. § 790.6(b).  Waiting for passengers is "integral and indispensable to [a limousine driver's] principal activity of transporting customers."  *Powell*, 514 F. Supp. 2d at 1322.  The continuous workday rule thus mandates that this waiting time be included as hours worked.  *See IBP*, 546 U.S. at 40; *cf. Wright*

---

[4] Of course, the situation described by Mr. Silvestro in his deposition, in which Defendants and a driver had come to an explicit agreement on one particular workday that the driver would not receive any further assignments after his morning run until a designated time later in the afternoon so that he could visit his father who lived near the airport, *see* Doc. No. 65-2, at 5-6, would not fall under the category of ordinary waiting time, but instead appears to be an example of the driver going "off duty," as the term is defined by federal regulations.  The driver in this example arguably "is completely relieved from duty" for a period "long enough to enable him to use the time effectively for his own purposes" and was "definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived."  29 C.F.R. § 785.16.

*v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960) (time spent waiting by mail truck driver for trains to pick up and deliver mail "should be included in the hours for which the employee is entitled to be paid").

### iii.    "On Call"

At this stage, the Court need not reach the question of whether pure "on call" time, where a driver has completed an assignment but has not yet received another assignment, is compensable.  The undisputed record evidence shows that this time was not included in the computation of weekly hours worked by the named plaintiff.  Mr. Lassen testified as follows:

> Q.  [I]f you had a run in the morning and . . . you're waiting for a dispatcher to give you another run.  You don't have any right now.  You go home. . . .  [Y]ou wait around there two hours and you get a call on your cell phone from the dispatcher saying, hey, I got a run down to do a pick-up in LaGuardia and come back and drop off in New Canaan. . . .  And you say yes, I will take that.  It's after two hours of waiting until you got that call, are you claiming that those are work hours for purposes of getting overtime?
>
> A.  No, I'm not claiming that.  No.

Doc. No. 65-3, at 13-14.  Thus, for the limited purpose of determining the existence of liability in this case based on a forty-hour workweek, the amount of pure "on call" time is not relevant.

## V.    Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Summary Judgment as to liability on Counts One and Two [Doc. No. 41].  The amount of damages owed remains to be determined after further proceedings.  *See*, *e.g.*, *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 462, 462 n.14 (S.D.N.Y. 2008) (granting summary judgment on liability and stating that the amount of damages owed would be set after additional proceedings); *Barfield v. N.Y. City Health & Hosps. Corp.*, 432 F. Supp. 2d 390, 395 (S.D.N.Y. 2006) (granting summary judgment on liability and directing counsel to submit an estimate of unpaid wages for purposes

of damages award), *aff'd*, 537 F.3d 132 (2d Cir. 2008); *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 186 (E.D.N.Y. 2004) (granting summary judgment on liability without finalizing damages for unpaid overtime after concluding plaintiffs were non-exempt).

**SO ORDERED** this 5th day of August, 2015, at Bridgeport, Connecticut.

 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE