**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **ROGER LASSEN, JR., individually and on behalf of all other similarly situated individuals** | : | **CIVIL ACTION NO. 3:13-cv-01529 (VAB)** |
| **Plaintiff** | : | |
| | : | |
| **V.** | : | |
| | : | |
| **HOYT LIVERY, INC., SANTO SILVESTRO, and LYNDA SILVESTRO** | : | |
| **Defendants** | : | **June 20, 2016** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DECERTIFY THE FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION**

## I. INTRODUCTION

Defendants seek to have both the FLSA collective and the Rule 23 class decertified, arguing that liability cannot be determined on a class-wide basis. *See* Defendants' Memorandum at 18, 20, 25-28. Indeed, Defendants spend the majority of their Memorandum arguing liability issues. Defendants simply ignore the inconvenient fact that *liability already has been determined on a class-wide basis*. Indeed, Defendants barely mention that the Court already has granted summary judgment as to liability on both Counts, and denied Defendants' motion to reconsider. *See* Docs. 131, 160. The majority of Defendants' arguments are simply a misplaced attempt to re-argue summary judgment. These arguments already have twice been rejected by the Court, and have no bearing on whether the case may proceed as a collective action and class action.

Simply put, this case is now a hearing in damages and a hearing regarding Defendant's claim that it acted in good faith in misclassifying these workers. The question before the Court is whether or not it can adjudicate a hearing in damages on a collective and/or class basis, and not whether there are common liability issues. Discovery has shown that damages can be

adjudicated on a collective and/or class basis. The mere fact that there are differences in damages does not mandate decertification of either the collective or class. Accordingly, Defendants' motion should be denied.

## II. PROCEDURAL HISTORY

On October 18, 2013, Plaintiff Roger Lassen, Jr. filed his complaint in this matter. *See,* Doc. 1. On February 12, 2014, Plaintiffs filed their motions for class certification pursuant to 29 U.S.C. Section 216(b) and pursuant to Rule 23 of the Federal Rules of Civil Procedure. *See*, Doc. 21 & 22. Defendants filed their Opposition to Plaintiffs' Motions for Class Certification on March 24, 2014. *See* Doc. 29. Plaintiffs filed their reply on April 7, 2014. *See* Doc. 34 & 35. Although the Court held argument on these motions on April 22, 2014, it was taken under advisement. *See* Doc. 38. During the interim period, the parties conducted discovery. On September 12, 2014, the Plaintiffs filed their Motion for Partial Summary Judgment as to Counts 1 & 2 of the Complaint. *See* Doc. 42. Five days later, on September 17, 2014, the Court, Meyer, J., granted Plaintiffs' motions for certification of a collective action under the Fair Labor Standards Act ("FLSA") and for certification of a class action for violations of the Connecticut Minimum Wage Act ("CMWA") under Rule 23 of the Federal Rules of Civil Procedure. *See* Doc. 43.

The opt-in period for the FLSA collective action and opt-out period for the Rule 23 class action expired on December 2, 2014. On December 29, 2014, Defendants served discovery on the opt-in Plaintiffs. Defendants followed up the discovery requests with depositions of those new opt-ins who responded to the discovery requests.

On August 5, 2015, the Court, Bolden, J., granted Plaintiffs' Motion for Partial Summary Judgment as to liability on Counts One and Two of the Complaint. *See* Doc.

131. Defendants filed their Motion for Reconsideration on September 4, 2015. On May 17, 2016, the Court, Bolden, J. denied this Motion for Reconsideration. *See* Doc. 160.

On May 20, 2016, the Defendants filed their Motion to Decertify the FLSA Collective and Rule 23 Class Actions.

## III. FACTUAL BACKGROUND

Defendant Hoyt Livery, Inc. ("Hoyt") is a limousine company, which holds livery permits from the State of Connecticut. Deposition of Santo Silvestro in *Dupee v. Hoyt Livery, Inc., et al.*, Docket No. 3:13-cv-01185 (RNC) (Exhibit A), at 15:23-16:8. Plaintiff, Roger Lassen, Jr., as well as all members of the class and the collective, were drivers for Hoyt. *See, e.g.*, Deposition of Roger Lassen, Jr. (Exhibit B) at 10:20-11:5; Deposition of Jeffrey Capone (Exhibit C), at 7:8-13. Defendant Santo Silvestro is President and Treasurer of Hoyt. Amended Complaint, Doc. 134, at ¶ 7; Answer, Doc. 137, at ¶ 7. Defendant Lynda Silvestro is the Secretary of Hoyt. Amended Complaint, Doc. 134, at ¶ 8; Answer, Doc. 137, at ¶ 8.

Drivers for Hoyt were not paid hourly; rather, they were paid a flat rate of 40% per trip. Exhibit A at 23:24-24:3; Deposition of Lynda Silvestro in *Dupee v. Hoyt Livery, Inc., et al.*, Docket No. 3:13-cv-01185 (RNC) (Exhibit D), at 25:13-21; *see also* Exhibit B at 23:2-12; Exhibit C at 25:21-26:7; Deposition of Lindell Mann (Exhibit E), at 61:21-25, 63:4-25; Deposition of Dickson Mathon (Exhibit F), at 9:4-7, 40:16-19; Deposition of Kevin Mauricin (Exhibit G), at 20:21-21:7; Deposition of Murphy Pierce (Exhibit H), at 30:7-14; Deposition of Albert Profeta (Exhibit I), at 20:15-17, 23:24-24:3; Deposition of Kevin Reid (Exhibit J), at 44:21-45:3; Deposition of Kapil Verma (Exhibit K), at 47:24-48:7, 75:7-16; Deposition of Ali Yahya (Exhibit L), at 52:15-17. Thus, no Drivers ever were paid overtime compensation when they worked more than 40 hours in a given week. Exhibit A at 26:18-25.

In addition, Drivers performed certain activities for which they received no compensation beyond the 40% flat fee. For example, Hoyt provides customers with one "free" hour of wait time for pick-up at an airport, for which Drivers did not receive any compensation. Exhibit A at 32:12-13. Nor did Hoyt provide compensation to Drivers for time spent driving to a pick-up location without a customer in the vehicle. *Id.* at 67:11-17. Additionally, Drivers were expected to maintain their assigned company vehicle, bring the vehicle in for service, check their vehicle's fluids, wash and wax their vehicle, take the vehicle to an auto body shop if necessary, bring the vehicle to an auto repair shop for regular oil changes and transmission service, and rotate the vehicle's tires – all without compensation. *Id.* at 50:2-53:9; *see also* Driver Handbook (Exhibit M), at pp. 33-35.

Much of the job of Driver for Hoyt was spent engaged to be waiting – waiting for customers to arrive at an airport, and waiting between runs. *See, e.g.* Exhibit B at 30:22-31:21; Exhibit C at 42:22-43:6; Exhibit E at 70:15-17, 102:11-24; Exhibit F at 11:2-6, 59:11-19; Exhibit G at 94:15-95:4; Exhibit H at 40:16-20; Exhibit I at 76:11-14, 86:12-14; Exhibit J at 48:21-49:1, 51:23-52:2; Exhibit K at 131:4-11; Exhibit L at 53:18-54:6, 84:10-12. It was not unusual for a Driver to drop off a customer at an airport, and then wait at least three hours at the airport for another pick-up. *See, e.g.* Exhibit B at 30:22-31:21; Exhibit C at 42:22-43:6; Exhibit E at 70:15-17; Exhibit F at 11:2-6; Exhibit I at 35:14-20; Exhibit J at 52:11-21, 146:18-147:8; Exhibit K at 36:13-23, 111:25-112:5; Exhibit L at 120:6-14. During this time spent waiting, Drivers were not free to use the time for their own purposes. *See, e.g.*, Exhibit G at 15:3-6; Exhibit H at 42:6-10; Exhibit I at 155:22-156:7. They had to stay with the vehicle. *See, e.g.* Exhibit B at 31:14-17; Exhibit C at 35:4-16; Exhibit E at 104:20-23; Exhibit F at 13:8-13; Exhibit G at 97:25-98:3; Exhibit I at 155:22-25; Exhibit J at 98:22. They were not permitted to use the vehicle for

personal business – "not even to go around the corner from his or her house to get a container of milk." Exhibit M at pp. 24, 30. They were required to keep their two-way radio on at all times. *Id.* at p. 30; Exhibit I at 156:8-11. Drivers were expected to be ready to start a new assignment immediately upon receiving notification from Hoyt. *See, e.g.* Exhibit C at 35:7-11; Exhibit E at 243:14-22; Exhibit G at 10:12-23; Exhibit I at 156:13-21. Drivers generally did not know when they finished an assignment when their next assignment would start. *See, e.g.* Exhibit A at 21:3-17; Exhibit E at 238:8-14; Exhibit F at 11:2-6, 28:20-29:6; Exhibit G at 81:10-18; Exhibit I at 78:15-18; Exhibit J at 134:21-135:5.

## IV. ARGUMENT

### A. The Plaintiffs Have Put Forth Sufficient Evidence to Maintain A Collective Action Pursuant to Section 216(b) of the Fair Labor Standards Act.

#### *1. The Two-Step Analysis for Certification of a Collective Action*

There are two conditions for maintaining a collective action under the FLSA. First, the named plaintiff and the putative class members must be "similarly situated." *See* 29 U.S.C. § 216(b); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Second, the putative class members must "opt-in" and thereby consent in writing to be bound by the result of the suit. The collective action provisions of statutes such as the FLSA are intended to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). *See also Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 541 (S.D. Tex. 2008) (citing *Hoffman*).

Most courts within the Second Circuit utilize a two-step approach to certifying collective actions under the FLSA. *See, e.g.*, *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 179-180 (D. Conn. 2010) (Hall, J.); *Neary v. Metropolitan Property & Casualty Ins. Co.*, 517 F. Supp. 2d 606, 618 (D. Conn. 2007) (Arterton, J.); *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103,

105-06 (D. Conn. 2007) (Bryant, J). At the preliminary notice stage, "plaintiffs are only required to demonstrate a factual nexus which supports a finding that potential plaintiffs were subjected to a common discriminatory scheme." *Jackson v. New York Telephone Co*., 163 F.R.D. 429, 431 (S.D.N.Y. 1995). *See also Scott v. Aetna Servs.*, 210 F.R.D. 261, 264 (D. Conn. 2002) (citations omitted) (in the first phase of an FLSA collective action inquiry, a court examines the pleadings and affidavits of the proposed class action and determines whether the proposed class members are "similarly situated); *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (citation omitted) (the FLSA requires only "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged discrimination").

In the second stage analysis, which usually is initiated by a Defendant's motion to de-certify the action, courts typically consider three factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment.]" *Jacob v. Duane Reade, Inc,* 2016 U.S. Dist. LEXIS 75384, *29 (S.D.N.Y. June 9, 2016)[1], quoting, *Indergit*, 293 F.R.D. 632, 639. *See also*, *Briceno v. USI Servs. Group, Inc.* 2015 U.S. Dist. LEXIS 132185, at *30-31 (E.D.N.Y. Sept. 29, 2015). "At this stage, the court makes a factual finding on the "similarly situated" issues, based on the record produced through discovery…If the court finds that the claimants are "similarly situated," the representative action may proceed to trial." *Id.* The burden is on the plaintiffs to prove that the other employees are similarly situated. *Perez v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 130214 at *17 (E.D.N.Y. Sept. 16, 2014). As the court noted in *Pefanis v. Westway Diner, Inc.,* 2010

[1] Unreported cases are attached as Exhibit N.

U.S. Dist. LEXIS 93180 (S.D.N.Y. Sept. 7, 2010), "[a]ll that is required [to survive a motion to decertify] is a persuasive showing that the original and opt-in plaintiffs were common victims of an FLSA violation pursuant to a systemically applied company policy or practice such that there exist common questions of law and fact that justify representational litigation."

*2. All Plaintiffs Are Similarly Situated as to Liability Issues*

Defendants argue that, because this case is an "off the clock" overtime case, it is not possible to demonstrate that the plaintiffs are similarly situated, focusing particularly on the issue of waiting time. This argument is wrong. First, this is not an "off the clock" case, where the employees worked 40 hours per week "on the clock," and then were told by management to clock out and continue working. There was no clock. These employees simply worked and weren't paid overtime wages. Unlike true "off the clock" cases, these plaintiffs need not show a common plan to make them work unrecorded time. They need only show how much they worked.

Second, contrary to Defendants' assertions, courts consistently have denied decertification of collective actions in "off the clock" cases, particularly where the plaintiffs can demonstrate that they were subject to a uniform employer policy, as they are in this case. *See Briceno v. USI Servs. Group, Inc.*, 2015 US Dist. LEXIS 132185, *35-41 (E.D.N.Y. Sept. 29, 2015) (denial of Motion to Decertify where plaintiffs could show that they were subject to uniform system for timekeeping and uniform complaint procedure and fairness and procedural considerations supported collective action); s*ee also McGlone v. Contract Callers, Inc.* 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) (denial of motion to decertify where employees all held same job and were subject to a common FLSA violation); *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 453, 459 (N.D.N.Y 2014) (decertification denied where plaintiffs all worked in the same

office, were compensated under the same payment plans, and alleged that they were subjected to unified policies that violated the FLSA).

For example, in *McGlone, supra,* the court rejected the defendants' arguments that there were too many variations in an "off the clock" case to be similarly situated. The court stated, "These arguments are unavailing. Courts have found opt-in plaintiffs similarly situated 'in large off-the-clock cases despite the individualized issues such cases present…[e]ven where individualized testimony into damages is required.'" 49 F. Supp. 3d at 367 (internal citations omitted). The *McGlone* court went on to state, "individual differences in number of hours worked…will not warrant decertification as long as [p]laintiffs show they are subject to a 'single decision, policy or plan…Here, Plaintiffs have adduced evidence that they were common victims of a FLSA violation." *Id.* at p. 368 (internal citation omitted).

Additionally, in *Johnson, supra,* the court, when considering a motion to decertify an FLSA action based upon allegations of "off-the-clock" work, stated, "[t]o show that they are similarly situated, Plaintiffs may present evidence to show that an employer engaged in a unified policy, plan, or scheme of FLSA violations." 4 F. Supp. 3d at 459 (internal citation omitted). The court determined that, since the plaintiffs were all compensated pursuant to a specific plan, which failed to pay overtime, decertification was not warranted. *Id.* The court also determined that the plaintiffs were subject to other employment policies that were designed to deny them overtime pay, specifically one policy which instructed employees to record taking a lunch break, whether they did or not, and another that permitted employees to perform work at home without compensation. *Id.* Based upon these facts, the court concluded that "this evidence, which tends to show that plaintiffs were subjected to unified policies of their employer which violated the FLSA and the NYLL supports a finding that the plaintiffs are similarly situated." *Id.*

Even if this case is compared to "off the clock" cases, it still survives decertification. The undisputed evidence shows that the named Plaintiff and the opt-in Plaintiffs all were subject to a uniform pay policy that paid them a flat rate of 40 percent for each trip, and deprived them of overtime compensation when they worked more than forty hours in a week. Indeed, Defendants Santo Silvestro and Lynda Silvestro have admitted this. *See* Exhibit A at 23:21-26:25; Exhibit D at 25:13-21. This evidence is sufficient to show that all Plaintiffs are similarly situated under the FLSA.

There is another important reason why decertification is not warranted because of alleged differences in liability issues. Plaintiffs not only have demonstrated that they were subject to a common or unified policy – specifically Defendants' per-trip pay policy and their consistent practice of not paying any drivers for time worked over forty hours - *but this Court also concluded that this common or unified policy violated the FLSA* when it granted Plaintiff's partial motion for summary judgment as to liability. Simply put, this Court already has determined that, for purposes of establishing liability, the members of the collective are similarly situated. Despite the facts that judgment as to liability was entered as to Counts 1 and 2 of the Plaintiffs' Complaint, and thus the question of the Defendants' liability for its unlawful conduct now is settled, Defendants fail to even acknowledge the Court's ruling. Indeed, Defendants' Motion to Decertify is a thinly veiled attempt to re-litigate the issues they lost on summary judgment and in their Motion for Reconsideration.

Defendants cite a series of cases, which they claim demonstrate that it is appropriate to decertify a FLSA collective action where "the ultimate overtime liability question require[s] individualized assessments." (Def. Brief at p. 18). However, Defendants ignore one glaring difference between the case at bar and the cases that they cite – in the case at bar, the Court has

already concluded that the Defendants are liable for the FLSA (and CMWA) violations. Therefore, no "individualized assessment" of overtime liability is necessary or appropriate. For example, in *Willoughby v. Youth Villages, Inc.*, 113 F. Supp. 3d 1265 (N.D. Ga 2015), the court granted the Defendants motion to decertify because there was no evidence of a FLSA violating company-wide policy but there was evidence of different instructions and conduct by different supervisors. This case is clearly distinguishable from the present case in that, here, there is *no* dispute that the Defendants had a uniform policy that prohibited all employees from being compensated for their overtime. Additionally, in *Brewer v. GNC*, 2014 U.S. Dist. LEXIS 159380 at *55-57 (N.D. Cal. Nov. 14, 2014), the Court decertified the FLSA collective action because many of the employees did not work close to 40 hours per week and the Defendants had disparate defenses to the failure to pay other employees overtime. Again this case is distinguishable from the present case because there is no allegation that some variations in managerial discretion allowed some employees to be paid for overtime – Defendants have a clear and uniform policy that drivers are paid a flat rate per trip, and none of them ever get paid overtime.

Indeed, all of the cases cited by Defendants in support of this argument actually fail to support it. For example, Defendants also cite *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014). Again, *Stiller* is distinguishable because the court concluded that there were differences in how the individual managers enforced the uniform policy at issue, which defeated the collection action. *See also Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) (court granted motion to decertify where employer policy was lawful and no clear evidence that all of plaintiffs were subject to violations of that policy in the same way); *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291 (E.D. Pa. 2010) (court granted motion to decertify

because case differed from case where liability can be proven on class-wide basis and only material difference among plaintiffs is the amount of damages owed to each of them, which is generally considered insufficient to deny class treatment.); *Sargent v. HG Staffing, LLC*, 2016 US Dist LEXIS 39893, *93-4 (D. Nev. Mar 22, 2016) (class decertified where employees could not show that they were bound by common policy of discrimination); *Seward v. IBM Corp.*, 2012 U.S. Dist. LEXIS 49688 (S.D.N.Y. Jan.20, 2012) (class decertified where job duties, team function, managerial expectations and individual experiences too diverse, defenses were individualized and fairness requirement weighed in favor of decertification).

Defendants consistently ignore the fact that this Court already found class-wide liability on both the FLSA and the CMWA claims. While they may hope to re-litigate these issues, this Court's decision on Defendants' Motion for Reconsideration is clear – the Court held that "[o]rdinary wait time between runs is compensable time." Doc. 160, p. 1. In the Order granting summary judgment, this Court set out the requirements for wait time to be compensable. For example, this Court held that "ordinary wait time is compensable." This Court further stated that time spent waiting for passengers is also compensable. Doc. 131*,* p. 16. This Court concluded by stating, "the amount of damages remains to be determined after further proceedings." *Id,* p. 17. This Court did not state that individual liability needs to be determined after further proceedings; rather, it granted summary judgment as to liability.

Defendants attempt to suggest that there is some ambiguity in this decision and refer to the telephonic status conference held by the Court following the summary judgment ruling to determine if the parties were interested in a settlement conference. Defense counsel stated that "[w]e're just not clear as to I guess the scope of the ruling in terms of liability." Tr. at p. 4. The Court stated, '…I think the best way to answer it, and this is sort of consistent with what the Fair

Labor Standards Act sort of expects, is that that ruling was simply an issue in terms of liability, which is that the record, based on what we have, suggested that there is evidence that some people may have worked more than 40 hours. It's not a determination that any particular person, you sort of worked 40 hours, and is not a command to sort of pay that. *I think those are really proof of damages. All it is is just a liability determination that there are issues that have to be resolved with respect to overtime. Anyone who would actually be owed any overtime would then have to provide specific evidence of proof and that will be the damage termation. (sp)."* Tr. at p. 4 (emphasis added). Defense counsel then indicated that they may be filing a motion for reconsideration and the Court indicated that it would review anything that the defense had. (Tr. at p. 7). Defendants then filed their Motion for Reconsideration, and when given the opportunity to review and/or revise the determination of liability on summary judgment, the Court rejected their arguments and affirmed its holding as to liability. Doc. 160. Despite Defendants' claims to the contrary, at no point in either of its rulings did the Court indicate that it believed that Plaintiffs needed to establish individual liability. Instead, the Court reiterated that proof of damages was the next necessary step.

Even if the Court were to consider these liability issues, however, the evidence shows that the collective is similarly situated. Defendants argue that variations in the amount of overtime claimed by the opt-in class mandates decertification. *See* Defendants' Memorandum at 7-9, 16-21. This argument is misplaced. First, Defendants rely upon the same twenty-four "happy camper" declarations on which they relied in opposing both certification and summary judgment. *See* Defendants' Memorandum at 7. These people, however, are not part of either the FLSA collective or the Rule 23 class, so their experience carries little, if any, weight in determining whether the members of the collective are similarly situated. As for those drivers

who actually are in the collective, Defendants have conceded that they all testified that they worked at least 40 hours per week during some weeks without receiving overtime compensation. *See* Defendants' Memorandum at 7-8 and transcripts cited therein; *see also* Exhibit C at 25:21-26:7; Exhibit E at 61:21-25, 63:4-25; Exhibit F at 9:4-7, 40:16-19; Exhibit G at 20:21-21:7; Exhibit H at 30:7-14; Exhibit I at 20:15-17, 23:24-24:3; Exhibit J at 44:21-45:3; Exhibit K at 47:24-48:7, 75:7-16; Exhibit L at 52:15-17.

Defendants next argue that variations in what the Drivers did during times spent either waiting for customers or waiting between assignments proves that the collective is not similarly situated and thus requires decertification. *See* Defendants' Memorandum at 10-11. Defendants ignore this Court's prior ruling that ordinary waiting time is compensable. *See* Doc. 131 at 13-17. The Court based this determination on several factors. First, relying on the deposition testimony of the named Plaintiff and two opt-ins (Jeffrey Capone and Murphy Pierce), the Court concluded that "[t]he record evidence in this case shows that, while waiting between assignments, limousine drivers must 'stay in proximity to the vehicle, … 'stay dressed' in uniform, … and be ready to take on an unexpected new assignment in the interim or otherwise risk losing the assignment they were already waiting for…." Doc. 131 at p. 15 (internal citations omitted). All of these facts have been confirmed by the depositions of the remaining opt-ins. *See, e.g.*, Exhibit E at 104:20-23 (driver had to stay with the vehicle); Exhibit F at 13:8-13 (same); Exhibit G at 97:25-98:3 (same); Exhibit I at 155:22-25 (same); Exhibit J at 98:22 (same); *see also* Exhibit E at 238:8-14 (assignments would come in "at any time"); Exhibit G at 10:12-23 (driver was not free to do whatever he wanted to do because a call may come in saying he was needed in 20 or 30 minutes); Exhibit I at 156:13-21 (driver could receive a call at any point); Exhibit J at 135:7-8 (jobs could be given "on the fly"). The Court also relied on the FLSA's

continuous workday rule to determine that time spent waiting for passengers was compensable time. Doc. 131 at 16-17.

Defendants have argued three times that differences in waiting time among drivers precludes a collective determination of liability – in their opposition to the original motion to certify the collective, in their opposition to the motion for summary judgment, and in their motion for reconsideration. This argument has been rejected by the Court each time. Defendants now seek a fourth bite at the apple. This attempt likewise should be rejected, and the Court should deny Defendants' motion to decertify the collective action.

### B. Plaintiffs Have Put Forth Sufficient Evidence to Maintain A Rule 23 Class Action For Violations Of The Connecticut Minimum Wage Act.

On September 14, 2014, Judge Meyer granted the Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23(b)(3). *See* Doc. 43.

> In order to maintain a Rule 23 class action, the plaintiffs must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Additionally, the plaintiffs must show that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that class action is superior to other available members for fairly and efficiently adjudicating the controversy.

Doc. 43, p. 14 (Meyer, J).

In this ruling, the Court concluded that Plaintiffs met the above standard. Specifically, as it pertained to commonality, the Court held, "the central dispute in this case is this: plaintiff claims that defendants' compensation policy violated the CMW, while defendants' vigorously deny that claim. *But what is not disputed (and could not be disputed in view of the defendants' concessions and ample record evidence) is that all members of the putative class were subject to a uniform compensation policy*. Doc. 43, p. 16 (emphasis added). The Court further stated,

> Other issues – how many hours a driver worked, how many trips a driver took, how each driver will prove the amount of damages (if any) to which he is entitled – may well require individualized inquires. This does not, however transform plaintiff's single fact-based theory of liability – the alleged illegality of an undisputed uniform compensation policy – into a series of individualized claims. It merely means that various class members may be entitled to differing damages (or no damages at all) if plaintiff prevails.

Doc. 43, p. 16 .

When addressing the typicality requirement, the Court stated "the disputed issue that is central to the claims of the plaintiff and all other putative class members is the alleged unlawfulness of Hoyt Livery's uniform compensation policy." Doc. 43, p. 17. The Court also rejected Defendants' claim that different damage assessments defeats typicality – the very argument that the Defendants continue to advance in their present motion. Of course, the disputed issue of whether the Defendants' policy was unlawful has now been resolved with the granting of the Plaintiffs' Motion for Partial Summary Judgment. In denying the Defendants' Motion for Reconsideration, the Court reiterated that it granted partial summary judgment as to liability "because there was no genuine issue of fact that "at least some of the drivers worked more than forty hours in a single work week on some occasions." Doc. 160, p.2.

A court can reconsider the certification of a class action after the initial determination is made, however, "the Court may not disturb its prior [certification] findings absent some significant intervening event, or a showing of compelling reasons to re-examine the question. *Gortat v. Capala Bros.*, 2012 U.S. Dist. LEXIS 47066, *6 (E.D.N.Y. April 3, 2012), quoting *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011). Indeed, the Court in *Gortat* further acknowledged that "'[c]ompelling reasons' for reexamination 'include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.*, quoting *Doe v. Karadzic*, 192 F.R.D. 133, 136-7

(S.D.N.Y. 2000). In *Gortat*, the Court noted that the stage of the litigation was a fact that weighed against decertification – acknowledging that an "eleventh hour motion is of the sort that, if granted, would prejudice members of the class who have not taken independent steps to protect their rights precisely because they were members of the class." 2012 U.S. Dist LEXIS 47066 at *15. In *Easterling v. State Dep't of Corr.*, 278 F.R.D. 41, 44 (D. Conn. 2011), Judge Hall cautioned that "[a] court should be wary of revoking a certification order completely at a late stage in the litigation process." 278 F.R.D. at 44. As with this case, the Court in *Easterling* was faced with a Motion to Decertify filed <u>after</u> summary judgment had been granted for the plaintiffs as to liability. *See also*, *Jacob v. Duane Reade, Inc.*, 2016 U.S. Dist. LEXIS 75384 (S.D.N.Y. June 9, 2016) (In case where complaint had been filed 5 years earlier and discovery was closed, court rejected motion for decertification, acknowledging that it was "mindful of potential for adverse and unfair prejudice to class members caused by an eve-of-trial decertification.").

Indeed, "absent a showing of a significant intervening event, or other compelling reason to reexamine the question of certification, the factual underpinnings of a court's prior certification order are "deemed to be the law of the case." *Stinson v. City of New York*, 2014 U.S. Dist. LEXIS 133741 (S.D.N.Y. Sept. 22, 2014), quoting *Langley v. Coughlin,* 715 F. Supp. 522, 553 (S.D.N.Y. 1989). Indeed, the Second Circuit, in *Woe v. Cuomo*, 729 F. 2d 96, 107 (2d Cir. 1984) found it to be an abuse of discretion for the trial judge to grant the defendants' motion to de-certify when there was no compelling reason to do so. Here, Defendants have alleged no "significant intervening event or compelling reason" to alter the established law of the case here. Thus, the Court's initial order, certifying this case as a Rule 23(b)(3) class action, should stand.

Defendants' argue that "a court should decertify a class action any time before final judgment when changes in circumstances render a class action no longer appropriate." Defendants' Memorandum, p. 24. However, in this case, there has been no change in circumstances since the Court granted summary judgment or denied Defendants' Motion for Reconsideration. At the time that summary judgment was granted, discovery had closed and the court was presented with a complete record as to the issues of commonality and predominance. Because liability already has been determined on a class-wide basis, Defendants' arguments that individual liability questions preclude a finding of predominance simply do not apply.

Defendants' argue that "it is the rule, not the exception" for courts to grant motions to decertify a class when the issues involve "off-the-clock" work. In support of this argument, they cite a litany of cases that purport to show that "the ultimate issue of overtime liability…required individual inquiries." However, these cases are distinguishable because in this case there has been already been finding of liability – a fact that the Defendants repeatedly try to ignore.

The Defendants rely on *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 (S.D.N.Y. 2015) in support of their argument that Lassen is not able to establish "common answers to the liability issues presented." *See* Defendants' Memorandum at 26. However, *Ruiz* is distinguishable for a number of reasons. First, unlike the Plaintiff here, the *Ruiz* plaintiffs had not yet established liability. Second, *Ruiz* involved a nationwide class action that involved, to a large extent, the exercise of managerial discretion. Such is not the case here. In this case, the Court previously determined that "the central dispute in this case is this: plaintiff claims that defendants' compensation policy violated the CWMA." Doc. 43 at p. 16. The answer to this question is unequivocally yes – as this Court recognized, in both the grant of the Plaintiffs' Motion for

Partial Summary Judgment and the denial of the Defendants' Motion for Reconsideration. Doc. 131; Doc. 160.

Defendants also rely on *Howard v. CVS Caremark Corp.,* 2014 U.S. Dist. LEXIS 172406 (C.D. Cal. Dec. 9, 2014); *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014); and *Koike v. Starbucks Corp.*, 2008 U.S. Dist. LEXIS 115164 (N.D. Cal. June 20, 2008). Defendants argue that these cases demonstrate that issues of "off the clock" work cases are not appropriate for class certification because it is not possible to determine liability through common proof.

However, in this case, the Court has not only concluded that the so-called "off the clock" work alleged was susceptible to common proof, but further, that there was sufficient evidence to conclude that the CMWA was violated. Indeed, none of the 4 cases cited above involve situations where a Court had found for the plaintiffs on liability on summary judgment *after* a class certification ruling.

Defendants' arguments that individual differences as to liability issues constitute a change in circumstances sufficient to mandate decertification, ignoring the fact that liability has already been determined on a class-wide basis. The Court should not re-examine its liability determination for a third time. Simply put, any alleged differences in proof of liability are irrelevant, and should be disregarded by the Court.

### C. <u>A Class Action Is Appropriate Even Where the Court May Be Required to Make Individualized Damage Assessments</u>

The Defendants, relying upon *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541 (2011) and *Comcast Corp. v. Behrend,* 596 U.S. ___, 133 S. Ct. 1426 (2013), argue that "class certification is not permitted where individual damage calculations will inevitably overwhelm questions common to the class." Defendants' Memorandum, p. 28. However, as the

Court noted in *Perez v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. 2014), "*Comcast* stands for the proposition that damages must be considered as part of the predominance analysis, yet that holding breaks no new ground, at least in this Circuit…. [N]either *Comcast* nor any other binding authority holds that the need to calculate damages on an individualized basis necessarily defeats the predominance element of Rule 23(b)(3)" (internal citations omitted). The Court in *Perez* stated further "What the rule does require is that common questions *predominate* over any questions affecting only individual [class] members…. To hold otherwise would 'drive a state through the heart of the class action device' in cases like this one….as '*damages determinations are individual in nearly all wage and hour class actions*.' *Id.*" 2014 U.S. Dist. LEXIS 130214 at *58-61 (emphasis added, internal citations omitted). *See also*, *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 453, 460 (N.D.N.Y. 2014) (individualized inquiries into damages may be necessary but do not preclude class certification); *Hart v. Rick's Cabaret Int'l Inc.*, 60 F. Supp. 3d 447, 472-3 (S.D.N.Y. 2014) (denying motion to decertify class where damages issue turns on hours worked by dancer each day).

Indeed, when Defendants raised this argument in support of their opposition to the Motion for Class Certification, the Court rejected it, stating, "Once it is determined which types of activities are compensable and how to calculate the hours for which a driver should have been compensated, damages for each driver will be a mere question of "arithmetical calculations based on … records and other documentary evidence." Doc. 43, p. 21. The Court further stated, "[e]ven if some drivers do attempt to use unique evidence (such as an affidavit attesting to hours he or she personal worked) to prove damages, there is no indication that these individualized damage inquires would predominate over generalized liability issues affecting the whole class."

*Id.* The Defendants have offered no new evidence to demonstrate that the initial assessment as to predominance should be reversed.

To establish predominance, a plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139. Differences in damages calculations have no bearing on whether or not a case may be maintained as a class action. *See Espinoza v. 953 Assocs. Ltd.*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) ("[a]lthough plaintiffs' claims may raise individualized questions regarding the number of hours worked and how much each employee was entitled to be paid, those differences go to the damages that each employee is owed, not to the common question of Defendant['s] liability."); *Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357 at *70-72 (finding that individualized damages calculations do not defeat the commonality requirement of Fed. R. Civ. P. 23).

Defendants have put forth no compelling reason why the differences in proving damages in this case somehow make it different from any other wage and hour class action. The Court should reject Defendants' efforts, and deny the motion to decertify the CMWA Rule 23 class.

## V. CONCLUSION

Defendants repeatedly argue that differences in proving liability prevent this case from proceeding as either an FLSA collective or a Rule 23 class. Defendants conveniently ignore the fact that liability on both counts already has been determined on a class-wide basis. Nothing has changed between the time that the class and collective initially were certified, the time the Court

granted summary judgment, the time the Court denied Defendant's motion for reconsideration, and the present motion to decertify. The mere fact that there may be differences in proving damages does not justify decertification. Accordingly, Defendants' motion should be denied as to both counts.

Plaintiff, ROGER LASSEN, JR.,
individually and on behalf of other similarly
situated individuals

By: */s/ Anthony J. Pantuso, III*
Anthony J. Pantuso, III
Fed. Bar No. ct11638
The Hayber Law Firm, LLC
900 Chapel Street, Suite 620
New Haven, CT 06510
(203) 691-6491
(860) 218-9555 (facsimile)
apantuso@hayberlawfirm.com
Attorneys for the Plaintiff

**CERTIFICATION OF SERVICE**

I certify that on **June 20, 2016**, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Anthony J. Pantuso, III*
Anthony J. Pantuso, III