UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROGER LASSEN, JR., individually and on
behalf of all other similarly situated
individuals,
    Plaintiff,

v.

HOYT LIVERY, INC., SANTO
SILVESTRO, and LYNDA SILVESTRO,
    Defendants.

No. 13-cv-1529 (VAB)

# RULING ON MOTION TO DECERTIFY FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION AND ORDER ON MOTION TO STRIKE

Plaintiff, Roger Lassen, Jr., on behalf of himself and others similarly situated, brought this action against Defendants, Hoyt Livery, Inc. ("Hoyt Livery"), Santo Silvestro, and Lynda Silvestro, asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31 to 58 *et seq.* ("CMWA"). ECF No. 134. On September 17, 2014, the Court (Meyer, J.) granted Plaintiff's motion to conditionally certify a FLSA collective action and to certify a Rule 23 class action as to the CMWA claims, with a class consisting of "all persons who have worked for Defendant . . . as full time limousine drivers between October 18, 2011 and the date of final judgment in this matter" (the "CMWA Class"). *See* Certification Order at 1-2, 13, ECF No. 43. In addition to Mr. Lassen, nine other plaintiffs opted in to the FLSA collective action (collectively, the "Opt-In Plaintiffs"), while the CMWA Class consists of thirty-five total members. *See* Approval Br. at 3-4, ECF No. 193-1.

1

On March 22, 2017, Mr. Lassen filed an unopposed motion for preliminary approval of the class action settlement. ECF No. 193. On April 14, 2017, the Court held a telephonic status conference to discuss the motion, ECF No. 196, and issued an order requiring the parties to supplement the motion for preliminary approval to address certain components of the proposed settlement, specifically "(1) the amount of the incentive award for the lead plaintiff; (2) the attorney's fees and costs, in particular documentation about the underlying lodestar figure; (3) the tax treatment of payments to the plaintiffs; (4) the general release language; (5) the confidentiality provision; and (6) the no re-employment provision." ECF No. 197. On May 9, 2017, Mr. Lassen filed a supplemental memorandum in support of the motion for preliminary approval. ECF No. 198. On June 2, 2017, the Court held another telephonic status conference to discuss the motion. ECF No. 200.

For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part. The Court grants preliminary approval of the settlement agreement as to the CMWA Class. The parties may, therefore, submit the proposed notice to CMWA Class members, using the notice procedures outlined in the settlement agreement. The Court, however, rejects certain provisions of the settlement agreement related to the FLSA collective action and the Opt-In Plaintiffs, namely the (a) general release provision and (b) the confidentiality provision. The parties are, therefore, directed to modify those provisions of the settlement agreement, as further explained below.

I. FACTS

   A. Factual Background

For nearly three years, Mr. Lassen worked as a limousine driver for Hoyt Livery, a Connecticut company owned by Mr. Silvestro and Ms. Silvestro. All drivers employed by Hoyt

2

Livery, including Mr. Lassen, were paid in accordance with a commission-based system. Under the system, a dispatcher assigned drivers to work trips requested by customers, and the assigned driver earned forty percent (40%) of whatever fee was charged to the customer for the requested trip. The 40% figure included two components: twenty-five percent (25%) was designated as a "commission," while fifteen percent (15%) was designated as a "built-in gratuity." Hoyt Livery required full-time drivers to be available six days a week.

Hoyt Livery also required full-time drivers to perform certain activities for which drivers received no additional compensation beyond the 40% commission per trip. For example, Hoyt Livery provides customers with one "free" hour of wait time for a pick-up at an airport, for which drivers did not receive compensation. Hoyt Livery also did not provide additional compensation for time that drivers spent driving to a pick-up location without a customer in the vehicle. Drivers also were expected to maintain their company vehicle, including by bringing in the vehicle for service, checking its fluids, washing and waxing, taking it to an auto body shop, and so on—all without additional compensation.

Until July 2013, Hoyt Livery did not maintain hourly time records for its drivers. During the period relevant to this lawsuit, Hoyt Livery drivers also did not receive additional compensation if they worked more than forty hours in a week. Regardless of how many hours a driver worked in a week or how many trips a driver took, all drivers earned the same "flat rate" 40% commission per trip. Hoyt Livery has since changed their policy, and now pays drivers one and a half times their weekly commission, if and when the driver works more than forty hours during that workweek.

B. **The Settlement Agreement**

1. **Settlement Fund and Attorney's Fees**

The settlement agreement and release between the parties ("Agreement") provides that Defendants, without admitting liability or wrongdoing, will cause to be paid a settlement fund of $670,000 ("Settlement Fund") to Plaintiffs and Plaintiffs' counsel. *See* Agreement at 3, ECF No. 193-3. The $670,000 in the Settlement Fund represents a total of: (a) $120,000 to Mr. Lassen and the Opt-In Plaintiffs; (b) $135,000 to the CMWA Class; (c) an incentive award of $15,000 to Mr. Lassen as the representative plaintiff in this case; and (d) an amount not to exceed $400,000 in attorneys' fees and costs to Plaintiffs' Counsel. *Id.* at 4. Half of the amounts (a) and (b) that will be paid to Mr. Lassen, the Opt-In Plaintiffs, and the CMWA Class members will be treated as wages "from which state and federal taxes will be withheld" by Defendants and "for which IRS W-2 forms will be issued," while the other half will be treated as "non-wage income . . . for which IRS 1099 forms will be issued." *Id.* The entire amount (c), the incentive award for Mr. Lassen, will be treated as "non-wage income . . . for which an IRS 1099 form will be issued." *Id.* at 4-5.

Each member of the CMWA Class that wishes to receive a share of the Settlement Fund must submit a claim form that will be provided with the class notice to Plaintiffs' counsel, within thirty days of when notice was mailed to them. *See* Agreement at 6.

2. **Waiver and General Release**

The Agreement includes a "waiver and general release of claims by [Mr. Lassen] and Opt-In Plaintiffs." Agreement at 8-9. The released claims include, but are not limited to:

> [A]ll claims relating to hours of work, payment of wages, overtime, or other compensation (including employment related expenses) and all claims relating to

employment or the termination thereof, including, but not limited to, all claims under the FLSA (29 U.S.C. § 201, et seq.), the CMWA (Conn. Gen. Stat. § 31-58, et seq.), the Employee Retirement Income Security Act, the Civil Rights Acts of 1866, 1964 and 1991, the Americans With Disabilities Act, the Rehabilitation Act, the Age Discrimination in Employment Act, the Older Workers' Benefit Protection Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the Connecticut Fair Employment Practices Act, the Connecticut Whistleblower Protection Act, the Connecticut Retaliation Statute, the retaliation provision under the Connecticut Workers' Compensation law, the Connecticut Family and Medical Leave Law, the Connecticut Occupational Safety and Health Act, the Connecticut WARN Law, all other claims under Titles 31 and 46a of the Connecticut General Statutes, any contract claims, and any tort claims.

*Id.* at 9. This waiver and general release provision provides further that Mr. Lassen and the Opt-In Plaintiffs are "waiving, releasing, remissing, and discharging [Defendants] from and with respect to all claims under federal, state, and local law, whether known or unknown, asserted or unasserted, and whether or not the claims arise out of or in connection with General Releasors' employment with [Defendants], the termination thereof, or otherwise." *Id.* at 9.

The Agreement also includes a more limited "waiver and release of claims by CMWA Class." Agreement at 9. This provision releases claims:

> arising out of or in any way relating to hours of work or payment of wages, overtime, or other compensation (including reimbursement of employment-related expenses and employment-related benefits of any kind), through the date of Final Approval of the settlement by the Court. These released claims include all claims under the FLSA (29 U.S.C. § 201, et seq.), the CMWA (Conn. Gen. Stat. § 31-58, et seq.), and any other federal, state, local, or common law relating to hours of work, payment of wages, overtime, or other compensation.

*Id.* at 9-10.

### 3. Confidentiality

The Agreement also includes a confidentiality provision covering Plaintiffs' counsel, Mr. Lassen, and the Opt-In Plaintiffs, which provides:

> Lassen, the Opt-In Plaintiffs, and Plaintiffs' Counsel will keep this Agreement, the Memorandum of Understanding Re: Terms of Settlement Agreement dated January 13, 2017, and all the events leading to this Agreement strictly confidential, and will not disclose such information in any way, including by social media of any type, except as required to obtain Court approval and to process this settlement. The Parties and Plaintiffs' Counsel agree not to contact any media outlet about this settlement or to make any postings or mailings about the Lawsuit or the settlement, except as Defendants may approve.

Agreement at 1. Mr. Lassen's supplemental memorandum in support of preliminary approval of the Agreement argues that this is a "limited confidentiality provision, which focuses on disclosure in the media and on social media." Supp. Br. at 9, ECF No 198. Mr. Lassen further argues that this confidentiality provision "is limited in scope, is directed solely to the named Plaintiff, the Opt-In Plaintiffs and their counsel, does not preclude Plaintiffs from assisting in other litigation against Defendants, and does not include a non-disparagement or liquidated damages provision." *Id.* at 10. He further notes that the Agreement is being filed publicly, and not under seal. *See id.*

### 4. Notice

The parties have agreed that Defendant will mail a notice, "in a form to be approved by Plaintiffs' Counsel, Defendants' Counsel, and the Court" to all CMWA Class members within ten business days of the Court's conditional approval of the Agreement. Agreement at 5. Such notice shall notify CMWA class members that if they have any objections, they must file such objection with the Court and serve Plaintiffs' Counsel with the objection within thirty days of the date when notice was mailed to them. *Id.* at 6. "In the event that a member of the CMWA Class fails to timely opt-in, his or her share of the Settlement Fund shall not revert to Hoyt, but shall be redistributed among the remaining members of the CMWA Class on a percentage basis." *Id.*

## II. DISCUSSION

Mr. Lassen seeks the preliminary approval of the Agreement, which would resolve the claims brought in the FLSA collective action and on behalf of the CMWA class.

Under Fed. R. Civ. P. 23(e), "[t]he claims . . . of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Before approving a class action settlement, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement," and a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks omitted).

"Preliminary approval is the first step in the class action settlement process" and "[i]t allows notice to issue to the class and for class members to object or opt-out of the settlement." *Chambery v. Tuxedo Junction Inc.*, 10 F. Supp. 3d 415, 419 (W.D.N.Y. 2014). Preliminary approval is "not tantamount to a finding that the settlement is fair and reasonable," instead, "[i]t is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

"Similarly, a settlement of an FLSA collective action is not effective unless it is judicially approved." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016) ("Thus, Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with

7

prejudice require the approval of the district court or the DOL to take effect."). "However, settlement of a [FLSA] collective action does not implicate the same Due Process concerns as the settlement of a class action because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *Lizondro-Garcia*, 300 F.R.D. at 179.

### A. Preliminary Approval as to CMWA Class

The litigation of this case has been long and hard-fought. The parties have thoroughly litigated the issues of class and collective action certification, Plaintiffs' motion for summary judgment as to liability, and the qualifications of Plaintiffs' proposed expert witness, among many other issues. *See* ECF No. 43; ECF No. 131; ECF No. 175. The parties negotiated the Agreement through multiple arms-length bargaining sessions after extensive motion practice and discovery. *See* First Pantuso Decl. ¶¶ 11-15, ECF No. 193-2. The parties participated in multiple mediation session, including one before experienced mediator Charles Stohler, Esq. on October 28, 2015, and one before Judge Holly B. Fitzsimmons on January 13, 2017. *Id.* ¶¶ 12, 14.

The Court finds that a "presumption of fairness" attaches to the Agreement and the negotiated amount of the Settlement Fund because the Agreement resulted from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116. "The assistance of an experienced mediator in reaching the proposed settlement reinforces its non-collusive nature." *Chambery*, 10 F. Supp. 3d at 419. The Court therefore grants preliminary approval of the Agreement as to the CMWA Class and finds that it is appropriate "to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Traffic Exec. Ass'n*, 627 F.2d at 634.

**B.     Notice**

Mr. Lassen's motion also seeks approval of the Proposed Notice of Class Action Settlement ("Notice") attached to the motion. *See* Proposed Notice, ECF No. 193-4. The Notice explains the background of the case, summarizes the amount of the Settlement Fund, and will explain each Notice recipient's expected share of the Settlement Fund if they opt in. *See id.* at 1-2. The Notice emphasizes that, in order for a recipient to receive their share of the settlement funds, they "must join this lawsuit by signing the consent form" provided in the Notice and mailing it to Plaintiffs' counsel. *Id.* at 2. The Notice also provides the date, time, and location of the Final Fairness Hearing and explains that each recipient has the right to opt out or object to the Agreement. *See id.* at 2. It also states that, if a recipient opts in to the class action, they will be "deemed to have waived and released any and all claims" against Defendants "relating to hours of work, payment of wages, overtime, or other compensation." *Id.* at 2. The Agreement provides that Defendant Hoyt Livery will, "[w]ithin ten (10) business days following Conditional Approval by the Court," mail a notice "to each member of the CMWA Class." Agreement at 5.

Under Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The Second Circuit has explained that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness," and that "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 113-14

(internal quotation marks omitted). "Notice is adequate if it may be understood by the average class member." *Id.* at 114 (internal quotation marks omitted).

The Court finds that the proposed Notice is reasonable and adequate and puts the class members on notice of the proposed settlement. The Notice provides the CMWA Class, in relevant part, with the necessary information regarding the case, the potential amount each will receive from the Settlement Fund, the fact that each CMWA Class member must opt in to receive a share of the Settlement Fund, the procedure to follow to opt-in, the nature of the released claims, the date and location of the Final Fairness Hearing, and the procedures to follow if they opt out or object to the Agreement. *See generally* Proposed Notice. The Court therefore approves of the proposed Notice as well procedure the parties have outlined in the Agreement with regards to the provision of notice to the CMWA class. *See* Agreement at 5-6 (explaining the procedure that will be followed if any copy of the Notice is returned).

### C.    Opt-In Plaintiffs

While the Court has no objection to the terms of the Agreement as to the CMWA Class, the Court rejects two provisions of the Agreement that relate only to the Opt-In Plaintiffs and the FLSA collective action, specifically the waiver and general release provision for the Opt-In Plaintiffs and the confidentiality provision, which applies only to "[Mr. Lassen], the Opt-In Plaintiffs, and Plaintiffs' Counsel." Agreement at 8-9, 11. The Court had first indicated these reservations during the April 14, 2017 telephonic status conference, ECF No. 196, and in an order dated April 14, 2017, ECF No. 197. During a later telephonic status conference held on June 2, 2017, ECF No. 200, the Court indicated that it still had certain reservations about these provisions, although the Court nonetheless suggested that preliminary approval of the Agreement as a whole might be warranted. The Court now finds, however, that the approval of the waiver

and general release provision for the Opt-In Plaintiffs and the confidentiality provision cannot be supported by the prevailing law, as further explained below.

In any event, because these provisions relate only to the Opt-In Plaintiffs, the Court believes these provisions can be addressed separately, without interfering with the schedule for the Final Fairness Hearing as to the Rule 23 class, or the CMWA Class.

### 1. Waiver and General Release

The Agreement's waiver and general release of claims for Mr. Lassen and the Opt-In Plaintiffs is extremely broad, with released claims that include, among others, claims under "the Employee Retirement Income Security Act, the Civil Rights Acts of 1866, 1964 and 1991, the Americans with Disabilities Act," the "Age Discrimination in Employment Act," the "Occupational Safety and Health Act," the "Family and Medical Leave Act," "any contract claims, and any tort claims." Agreement at 8-9. Under this provision, Mr. Lassen and the Opt-In Plaintiffs release all these claims "whether or not the claims arise out of or in connection with General Releasors' employment with [Defendants], the termination thereof, or otherwise." *Id.* at 9.

When scrutinizing FLSA settlements, courts will generally not approve settlement agreements containing release from liability provisions that are overly broad. *See Batres v. Valente Landscaping Inc.*, No. 14-CV-1434 (SIL), 2016 WL 4991595, at *3 (E.D.N.Y. Sept. 15, 2016) (internal quotation marks omitted) ("Relevant here, courts decline to approve FLSA settlements that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues. Indeed, courts in the Second Circuit have observed that broad releases are doubly problematic in

11

the FLSA context, where courts have a duty to police unequal bargaining power between employees and employers." (internal quotation marks omitted)).

Where a "settlement states that Plaintiff releases Defendants from a number of enumerated claims arising from the employment relationship, including on-the-job injuries and discrimination claims," claims that "have no relationship whatsoever to wage-and-hour issues," the "release from liability provided by the proposed settlement" will likely be "too broad." *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 WL 3637103, at *1 (S.D.N.Y. June 29, 2016) (internal quotation marks omitted); *but see Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *6 (S.D.N.Y. Nov. 6, 2015) ("[I]n the FLSA context, the settlement only binds the parties to the suit and the employee should know the other claims she potentially has against her employer. She should then be able to properly value those additional claims. In short, as compared to the class action context, there is a much smaller likelihood that other claims will be unfairly extinguished in an FLSA settlement.").

In light of the Second Circuit's recognition "of the unique policy considerations underlying the FLSA," and the "statute's remedial and humanitarian goals," which could be hampered by "an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," the Court cannot approve the Agreement's waiver and general release provision as to the Opt-In Plaintiffs. *Cheeks*, 796 F.3d at 206 (internal quotation marks omitted).

### 2. Confidentiality

The confidentiality provision in the Agreement governs "[Mr. Lassen], the Opt-In Plaintiffs, and Plaintiff's Counsel," and it provides that they must keep the Agreement "and all the events leading to [it] strictly confidential," and "not disclose such information in any way,

12

including by social media of any type, except as required to obtain Court approval and to process this settlement." Agreement at 11. It further provides that the parties and Plaintiffs' Counsel "agree not to contact any media outlet about the settlement." *Id.* Mr. Lassen's supplemental brief argues that this is a "limited confidentiality provision" that is focused "on disclosure in the media and on social media." *See* Supp Br. at 9.

Courts are reluctant to approve FLSA settlements that include confidentiality provisions, particularly ones that prevent the settling plaintiff from "directly or indirectly encourag[ing], induc[ing], solicit[ing] or assist[ing] anyone to file a wage and hour action or collective or class action against Defendants," which can be "contrary to public policy because they prevent the spread of information about FLSA actions to other workers . . . who can then use that information to vindicate their statutory rights." *Lopez*, 2016 WL 3637103 at *1 (internal quotation marks omitted).

Although Mr. Lassen argues that the confidentiality provision is a limited one focused on disclosure to media and on social media, the Court finds that the provision, as written, can be interpreted as being extremely broad, preventing Mr. Lassen and the Opt-In Plaintiffs from disclosing information about the Agreement and the case "in any way, including by social media of any type." Agreement at 11. As the Second Circuit has noted, "a battery of highly restrictive confidentiality provisions" is "in strong tension with the remedial purposes of the FLSA." *Cheeks*, 796 F.3d at 206. That the Agreement is part of the public record and has not been filed under seal is not sufficient to address these concerns. See *Banegas v. Mirador Corp.*, No. 14-CV-8491 (AJN), 2016 WL 1451550, at *3 (S.D.N.Y. Apr. 12, 2016) ("[P]ractically speaking the public filing of the settlement in this case, standing alone, is unlikely to benefit the low-wage

workers that the FLSA was intended to protect."). The Court therefore rejects the Agreement's confidentiality provision.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Mr. Lassen's pending unopposed motion for preliminary approval of the class action settlement, ECF No. 193. As explained above, the Court grants preliminary approval of the Agreement as to the CMWA Class, but rejects certain provisions of the Agreement related to the FLSA collective action and the Opt-In Plaintiffs, namely the waiver and general release provision and the confidentiality provision.

Because the Court has granted preliminary approval of all portions of the Agreement relevant to the CMWA Class, it is hereby ordered that:

1. The terms and conditions of the Agreement are preliminarily approved, except as to the waiver and general release provision and the confidentiality provision pertaining only to the FLSA Opt-In Plaintiffs, subject to further consideration at the Final Approval Hearing. The Court finds that notice of the proposed settlement should be given as the parties have provided in the Agreement

2. The proposed notice form, ECF No. 193-4, is approved, and shall be distributed in the manner outlined in the Agreement.

3. The Final Approval Hearing shall be held on Thursday, July 20, 2017, at 10:00 a.m. at the Brien McMahon Federal Building, 915 Lafayette Blvd., Bridgeport, CT 06604, in Courtroom Two.

SO ORDERED at Bridgeport, Connecticut, this 5th day of June, 2017.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge