## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROGER LASSEN, JR., individually and** | : | **CIVIL ACTION NO.** |
| **on behalf of all other similarly situated** | : | |
| **individuals** | : | |
| **Plaintiff** | : | **3:13-cv-01529 (VAB)** |
| | : | |
| **V.** | : | |
| | : | |
| **HOYT LIVERY, INC., SANTO** | : | |
| **SILVESTRO and LYNDA SILVESTRO** | : | |
| **Defendants** | : | **March 6, 2017** |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff Roger Lassen, Jr. the Opt-In Plaintiffs (as defined below), and Defendants Hoyt Livery, Inc., Santo Silvestro and Lynda Silvestro to resolve all claims asserted against Defendants in the action referred to below.

WHEREAS, on October 18, 2013, Lassen, individually and on behalf of all others similarly situated, filed this case -- *Lassen, et al. v. Hoyt Livery, Inc., et al.,* No. 3:13-cv-01529 (VAB) ("Lawsuit") -- alleging that Defendants unlawfully did not pay Lassen's and other drivers' overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the Connecticut Minimum Wage Act ("CMWA"); and

WHEREAS, on September 17, 2014 the Court, Meyer, J., certified the case as both a class action under the CMWA and a collective action under the FLSA; and

WHEREAS, the persons listed on Schedule A to this Agreement each filed a notice and consent to join the FLSA collective as a party plaintiff; and

WHEREAS, the persons listed on Schedule B to this Agreement neither opted out of nor were dismissed from the class action under the CMWA; and

WHEREAS, the Parties (as defined below) appeared before Magistrate Judge Holly B. Fitzsimmons on January 13, 2017 and engaged in extensive in person negotiations, and subsequently reached an agreement to resolve this litigation in principle subject to Court approval;

THEREFORE, in consideration of the premises and the mutual promises and terms set forth in the Agreement, the Parties agree as follows:

1.    <u>Definitions</u>

(a)    <u>Roger Lassen, Jr.</u>:  Lassen.

(b)    <u>Opt-In Plaintiffs</u>:  The persons listed on Schedule A to this Agreement.

(c)    <u>CMWA Class</u>: The persons listed on Schedule B to this Agreement who do not timely opt-out of the certified class upon Conditional Approval of the Parties' settlement, as set forth herein.

(d)    <u>Plaintiffs</u>:  Lassen, Opt-In Plaintiffs, and CMWA Class.

(e)    <u>Hoyt Livery, Inc.</u>:  Hoyt.

(f)    <u>Defendants</u>:  Hoyt, Santo Silvestro, and Lynda Silvestro.

(g)    <u>Parties</u>:  Plaintiffs and Defendants.

(h)    <u>Plaintiffs' Counsel</u>: The Hayber Law Firm, LLC.

(i)    <u>Defendants' Counsel</u>:  Seyfarth Shaw LLP.

(j)    <u>Conditional Approval</u>:  The date that the Court grants Plaintiffs' unopposed motion for conditional approval and sets a date for a hearing regarding fairness and Final Approval.

(k)    <u>Final Approval</u>: The date that is thirty-five (35) days after the later of (a) the date that the Court enters an Order unconditionally approving all terms of the Parties' settlement, if no appeal of such Order is filed; or (b) the final judgment resulting in unconditional approval of the Parties' settlement upon the conclusion of any appeals that may be filed.

2.   <u>Unopposed Motion for Conditional Judicial Approval</u>

Plaintiffs' Counsel shall prepare an unopposed motion for conditional Court approval of the settlement, subject to Defendants' approval.  The motion shall request a hearing regarding Final Approval, which hearing shall not occur prior to expiration of the notice period contemplated under the Class Action Fairness Act (28 U.S.C. § 1715).

The Parties and their counsel agree to cooperate in good faith to obtain Final Approval of the Agreement and to implement the terms and conditions of the Agreement.  The Parties further agree that, if the settlement provided herein is not approved by the Court in accordance with the terms of this Agreement, the Parties will continue to negotiate in good faith an agreement with terms that are acceptable to the Court and the Parties.  The Parties also agree that, should the Court deny Final Approval of the settlement after the Parties exhaust reasonable efforts to secure such approval, the Parties will return to their respective litigation status quo prior to January 13, 2017.

3.   <u>Non-Admission</u>

By entering into this Agreement, the Parties do not admit any liability, wrongdoing, or violation of law, statute, ordinance, order, regulation, agreement, benefit plan, or policy and expressly deny the same.  This Agreement is entered into solely for the purpose of amicably resolving the matters in controversy between the Parties and to avoid the expense of further litigation. Defendants expressly deny any wrongdoing.

4.   <u>Dismissal of Claims</u>

Lassen and the Opt-In Plaintiffs acknowledge and accept the consideration provided by this Agreement for the release and satisfaction of all claims covered by this Agreement, including attorneys' fees and litigation costs.  Based upon the provisions herein, Lassen and the Opt-In Plaintiffs agree to request that the Court dismiss with prejudice the Lawsuit; except that the Court will retain jurisdiction over the Lawsuit in order to administer and enforce this Agreement.

5.   <u>Settlement Fund</u>

The total amount Hoyt will cause to be paid pursuant to this Agreement is Six Hundred Seventy Thousand Dollars (**$670,000.00**) ("Settlement Fund"), which Lassen, the Opt-In Plaintiffs, and Plaintiffs' Counsel agree is good and adequate

consideration for the covenants in this Agreement.  The Parties agree that Lassen and the Opt-In Plaintiffs will propose -- and Defendants will not contest -- the following allocation of the Settlement Fund in the motion for settlement approval to be filed with the Court:

     a. <u>Lassen and Opt-In Plaintiffs</u>:  Lassen and the Opt-In Plaintiffs will receive a total of One Hundred Twenty Thousand Dollars (**$120,000**), in the specific amounts set forth by Plaintiffs' Counsel in Schedule A to this Agreement.

     b. <u>CMWA Class</u>:  The CMWA Class will receive a total of One Hundred Thirty-Five Thousand Dollars (**$135,000**), in the specific amounts set forth by Plaintiffs' Counsel in Schedule B to this Agreement, except as set forth in paragraphs 7a and 7c.

     c. <u>Incentive Award</u>:  In addition to the amount set forth in Schedule A, Lassen will receive an Incentive Award of Fifteen Thousand Dollars (**$15,000**).

     d. <u>Attorneys' Fees and Costs</u>:  Plaintiffs' Counsel will petition the Court for approval of an award of attorneys' fees and costs in an amount not to exceed Four Hundred Thousand Dollars (**$400,000**).  Defendants will not oppose such petition.  The Court's ruling on Plaintiffs' counsel's fee petition shall have no impact on the validity of the remaining terms of the Parties' settlement.  Plaintiffs' Counsel will pay any and all fees earned by the Quinn Law Firm on this matter out of this amount, and Defendants shall bear no responsibility for any payments to the Quinn Law Firm, beyond providing the Settlement Fund as contemplated herein.

     e. <u>Taxes:</u> (i) One-half (**1/2**) of the payments set forth in paragraphs 5a and 5b will be treated as wages, from which state and federal taxes will be withheld, and for which IRS W-2 forms will be issued.  Hoyt shall be responsible for the employer's share of any state and/or federal taxes.

     (ii) One-half (**1/2**) of the payments set forth in paragraphs 5a and 5b will be treated as non-wage income, from which there shall be no withholdings for state and federal taxes, and for which IRS 1099 forms will be issued.

     (iii) The entire incentive award set forth in paragraph 5c will be treated as non-wage income, from which there shall be no withholdings

for state and federal taxes, and for which an IRS 1099 form will be issued.

(iv)  The payments for attorneys' fees and costs will be allocated for purposes of issuing IRS Form 1099s as follows: One-half (**1/2**) of the total amount approved by the Court shall be allocated equally among Lassen and the Opt-In Plaintiffs; and one-half (**1/2**) shall be allocated equally among the CMWA Class Members who join the lawsuit as set forth in Section 7b.

(v)  To the extent that receipt of IRS forms W-4 or W-9 is administratively required for any payment contemplated by this Agreement, the payee's provision of the appropriate form(s) shall be a condition precedent to such payment.

6.   <u>Notice of Settlement</u>

a.  Within ten (10) business days following Conditional Approval by the Court, Hoyt will mail a notice to each member of the CMWA Class, in a form to be approved by Plaintiffs' Counsel, Defendants' Counsel, and the Court, informing each member of the CMWA Class of the settlement.  The notice shall include (i) the date of the Final Approval hearing; (ii) the amount the particular member of the CMWA Class is to receive if he or she signs the opt-in statement agreeing to join this Lawsuit, as set forth in paragraph 7b below; (iii) a statement of the requirements for objecting to the settlement, as set forth in paragraph 7a below; (iv) a statement as to the right to and requirements for opting out of the settlement, as set forth in paragraph 7c below; and (v) a statement regarding the release of claims applicable to each member of the CMWA Class, as set forth in paragraph 11 below, absent submission of a timely and written opt-out statement.

b.  If a notice is returned with a forwarding address, Hoyt will re-mail the notice to the new address within five (5) business days following receipt of the returned notice.

c.  If a notice is returned without a forwarding address, Hoyt shall inform Plaintiffs' Counsel within five (5) business days following receipt of the returned notice.  Plaintiffs' Counsel will then have five (5) business days to perform research appropriate in Plaintiffs' Counsel's discretion in an effort to ascertain the current address of the particular member of

the CMWA Class and take any other steps they deem appropriate to attempt to locate a current address, and to provide Hoyt with the updated address.  Hoyt will re-mail the Notice within three (3) business days after receipt of any updated address timely provided by Plaintiffs' Counsel.

7.   <u>Joining, Objections, and Opting Out</u>

   a.   <u>Objecting</u>.  Subject to Court approval, the notice contemplated by Section 6 shall state that each member of the CMWA Class seeking to object to the settlement must file with the Court and serve on Plaintiffs' Counsel such objection within thirty (30) days of the date of mailing of the notice as set forth in paragraph 6a.  Any such objection will be filed immediately with the Court by Plaintiffs' Counsel.  In seeking approval of the settlement, the Parties shall request that no person shall be entitled to be heard at the Final Approval hearing (whether individually or through separate counsel) or to object to the settlement, and no written objections or briefs submitted by any person shall be received or considered by the Court at the Final Approval hearing unless such materials are timely mailed as set forth herein.  The Parties shall request that members of the CMWA Class who fail to mail timely written objections be deemed to have waived any objection and shall be foreclosed from making any objection (whether by appeal or otherwise) to the settlement.

   b.   <u>Joining</u>.  Subject to Court approval, each member of the CMWA Class who wishes to receive a share of the Settlement Fund must submit to Plaintiffs' Counsel the claim form to be included in the notice contemplated by Section 7b, noting his or her intent to join this Lawsuit and including his or her name and address.  The Parties shall request that the Court direct that such opt in statements be mailed within thirty (30) days of the date of mailing of the notice as set forth in paragraph 6a.  Any such timely opt-in statement will be filed immediately with the Court by Plaintiffs' Counsel.  In the event that a member of the CMWA Class fails to timely opt-in, his or her share of the Settlement Fund shall not revert to Hoyt, but shall be redistributed among the remaining members of the CMWA Class on a percentage basis.  However, each member of the CMWA Class who fails to timely opt-in shall be bound by the release of claims set forth in paragraph 11.

c. <u>Opting Out</u>.  Subject to Court approval, each member of the CMWA Class who wishes to opt out of the settlement must submit to Plaintiffs' Counsel a written opt-out statement, noting his or her intent to opt-out of the settlement and including his or her name and address.  The Parties shall request that the Court direct that such opt-out statements be mailed within thirty (30) days of the date of mailing of the notice as set forth in paragraph 6a.  Any such timely opt-out statement will be filed immediately with the Court by Plaintiffs' Counsel.  In the event that a member of the CMWA Class timely opts out of the settlement, his or her share of the Settlement Fund shall not revert to Hoyt, but shall be redistributed among the remaining members of the CMWA Class on a percentage basis.  Each member of the CMWA Class who timely opts out of the settlement shall not be bound by the release of claims set forth in paragraph 11.

8. <u>Timing and Method of Payments</u>

a. Within thirty (30) days of Final Approval of the settlement, Hoyt will cause to be mailed to the last known addresses of Lassen and the Opt-In Plaintiffs checks totaling One Hundred Twenty Thousand Dollars (**$120,000**), in the specific amounts set forth in Schedule A to this Agreement (less withholdings as set forth in paragraph 5e).  At the same time, Hoyt will cause to be mailed the check for the incentive award set forth in paragraph 5c to Lassen at his last known address.  Hoyt also will cause to be mailed a check in the amount of Two Hundred Thousand Dollars (**$200,000**) or, if the Court approves an award of attorneys' fees and costs less than Four Hundred Thousand Dollars (**$400,000**), one-half (**1/2**) the amount of attorneys' fees and costs approved by the Court, payable to the Hayber Law Firm, LLC. Defendants' Counsel will confirm to Plaintiffs' Counsel the mailing of the payments referenced in this paragraph.

b. No later than January 15, 2018, Hoyt will cause to be mailed a check in the amount of Two Hundred Thousand Dollars (**$200,000**) or, if the Court approves an award of attorneys' fees and costs less than Four Hundred Thousand Dollars (**$400,000**), one-half (**1/2**) the amount of attorneys' fees and costs approved by the Court, payable to the Hayber Law Firm, LLC.

    c. No later than June 1, 2018, Hoyt will cause to be mailed to the last known addresses of the members of the CMWA Class who timely join as set forth in paragraph 7b checks totaling One Hundred Thirty-Five Thousand Dollars (**$135,000**), in the specific amounts set forth by Plaintiffs' Counsel in Schedule B to this Agreement (less withholdings as set forth in paragraph 5e) or such other amount as the Parties agree upon in the event that one or more members of the CMWA Class do not join the Lawsuit or opt-out of the settlement as set forth in paragraphs 7b and 7c. Defendants' Counsel will confirm to Plaintiffs' Counsel the mailing of the payments referenced in this paragraph.

    d. In the event that Defendants do not make either of the final payments identified in paragraphs 8b and 8c, judgment shall enter for the entire amount due as of such date.

    e. For each payment set forth in paragraphs 8a, 8b and 8c that Defendants pay after the due date, Defendants will pay an additional amount of One Thousand Dollars (**$1,000**) per month, to be allocated in equal shares to the Opt-In Plaintiffs.

    f. For each payment set forth in paragraphs 8a, 8b and 8c that Defendants pay before the due date, Defendants will receive a credit in the amount of One Thousand Dollars (**$1,000**) per month, to be deducted in equal shares from the payments due to the CMWA Class.

9.   <u>Attorney's Fees</u>

    Lassen and the Opt-In Plaintiffs acknowledge and agree that they are not entitled to any attorneys' fees, costs, or expenses other than those approved by the Court in an amount not to exceed Four Hundred Thousand Dollars (**$400,000**).

10.   <u>Waiver and General Release of Claims by Lassen and Opt-In Plaintiffs</u>

    Lassen and the Opt-In Plaintiffs, on their own behalf and on behalf of their respective family members, heirs, legatees, next-of-kin, executors, administrators, representatives, successors, and assigns (collectively "General Releasors"), fully and finally release and discharge Defendants, their past, present and future parents, subsidiaries, affiliates, predecessors, successors and assigns, and their past, present, and future owners, directors, representatives, officers, employees, shareholders, agents, insurers, attorneys, partners, accountants, heirs legatees, next-of-kin,

executors, administrators, and conservators (collectively, "Releasees"), in their personal, individual, official, and/or corporate capacities, of and from the Lawsuit and any and all actions, causes of action, suits, complaints, debts, dues, sums of money, damages, judgments, executions, claims and demands whatsoever, in law or equity, which General Releasors ever had, now have, or may have, whether now known or unknown, whether contingent or non-contingent, whether specifically asserted or not, through the date of Final Approval of the settlement by the Court. These released claims include, but are not limited to, all claims relating to hours of work, payment of wages, overtime, or other compensation (including employment related expenses) and all claims relating to employment or the termination thereof, including, but not limited to, all claims under the FLSA (29 U.S.C. § 201, et seq.), the CMWA (Conn. Gen. Stat. § 31-58, et seq.), the Employee Retirement Income Security Act, the Civil Rights Acts of 1866, 1964 and 1991, the Americans With Disabilities Act, the Rehabilitation Act, the Age Discrimination in Employment Act, the Older Workers' Benefit Protection Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the Connecticut Fair Employment Practices Act, the Connecticut Whistleblower Protection Act, the Connecticut Retaliation Statute, the retaliation provision under the Connecticut Workers' Compensation law, the Connecticut Family and Medical Leave Law, the Connecticut Occupational Safety and Health Act, the Connecticut WARN Law, all other claims under Titles 31 and 46a of the Connecticut General Statutes, any contract claims, and any tort claims.  General Releasors agree that the release of claims in this paragraph is a *general release*, and that any reference to specific claims is not intended to limit the release of claims.  General Releasors also agree that this *general release* means that they are waiving, releasing, remising, and discharging Releasees from and with respect to all claims under federal, state, and local law, whether known or unknown, asserted or unasserted, and whether or not the claims arise out of or in connection with General Releasors' employment with Releasees, the termination thereof, or otherwise.

11. <u>Waiver and Release of Claims by CMWA Class</u>

Upon Final Approval, the CMWA Class shall be deemed to, on behalf of themselves and on the behalf of their respective family members, heirs, legatees, next-of-kin, executors, administrators, representatives, successors, and assigns (collectively, "Limited Releasors"), fully and finally release and discharge Releasees (as defined in paragraph 10), in their personal, individual, official, and/or corporate capacities, of and from the Lawsuit and any and all actions, causes of action, suits, complaints, debts, dues, sums of money, damages, judgments, executions, claims

and demands whatsoever, in law or equity, which Limited Releasors ever had, now have, or may have, whether now known or unknown, whether contingent or non-contingent, whether specifically asserted or not, arising out of or in any way relating to hours of work or payment of wages, overtime, or other compensation (including reimbursement of employment-related expenses and employment-related benefits of any kind), through the date of Final Approval of the settlement by the Court.  These released claims include all claims under the FLSA (29 U.S.C. § 201, et seq.), the CMWA (Conn. Gen. Stat. § 31-58, et seq.), and any other federal, state, local, or common law relating to hours of work, payment of wages, overtime, or other compensation.

### 12.    Release Exclusions/Individual Protections

The waivers and releases of claims in this Agreement exclude: claims arising after the date of Final Approval; claims for breach of this Agreement; and claims that cannot be waived, such as for unemployment or worker's compensation. Neither the release provisions above nor anything else in this Agreement limit General Releasors' or Limited Releasors' right to file a charge with any administrative government agency (such as the U.S. Equal Employment Opportunity Commission), provide information to such agency, or otherwise participate in an agency investigation or proceeding. However, General Releasors and Limited Releasors waive the right to money or other relief based on any agency or judicial decision, including class or collective action rulings, regarding wages, overtime, or other compensation, and assign any such rights to monetary recovery to Releasees.

### 13.    Promise not to Sue

General Releasors promise not to sue Releasees regarding any claims released in paragraph 10 and shall be responsible for Releasees' attorneys' fees and costs in the event of a violation of such promise.  Limited Releasors shall be deemed to have promised not to sue Releasees regarding any claims released in paragraph 11 and shall be responsible for Releasees' attorneys' fees and costs in the event of a violation of such promise.

### 14.    Withdrawal of All Motions

The Parties will withdraw all pending motions in the Lawsuit upon Final Approval of the settlement by the Court.

15.   <u>Confidentiality</u>

Lassen, the Opt-In Plaintiffs, and Plaintiffs' Counsel will keep this Agreement, the Memorandum of Understanding Re: Terms of Settlement Agreement dated January 13, 2017, and all the events leading to this Agreement strictly confidential, and will not disclose such information in any way, including by social media of any type, except as required to obtain Court approval and to process this settlement. The Parties and Plaintiffs' Counsel agree not to contact any media outlet about this settlement or to make any postings or mailings about the Lawsuit or the settlement, except as Defendants may approve.

16.   <u>No Reemployment</u>

Lassen and the Opt-In Plaintiffs do not desire employment with any Releasees and will not knowingly seek or accept employment with any Releasees.  If Lassen or any Opt-In Plaintiff seeks or obtains employment with any of the Releasees following the execution of this Agreement, the Parties agree that this Agreement shall constitute a legitimate, non-discriminatory and non-retaliatory reason for refusal to hire and/or for the termination of any such employment.  However, in the event that Lassen or any Opt-In Plaintiff were employed by a company that any of the Releasees later acquired, this Agreement alone would not constitute reason to terminate such employment.

17.   <u>No Transfer or Assignment of Claims</u>

Lassen and the Opt-In Plaintiffs represent that they have not transferred or assigned to any person, firm, corporation, association, or entity any released claim, and agree not to do so.  Lassen and the Opt-In Plaintiffs further represents that there is nothing that would prohibit them from entering into this Agreement.

18.   <u>Entire Agreement</u>

This Agreement contains the entire agreement between the Parties and supersedes all other agreements between the Parties regarding the subjects in this Agreement.  Except as expressly set forth herein, no representations of any kind or character have been made by Defendants or their agents or Defense Counsel to induce Lassen or any of the Opt-In Plaintiffs to execute this Agreement.

19.   <u>No Modification</u>

This Agreement shall not be changed, modified, discharged or terminated in any manner unless in writing and signed by the Parties.

20. <u>Severability</u>

If any part of this Agreement is found by a court of competent jurisdiction to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law.  If one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.  Excluded from this paragraph are those provisions of this Agreement making all aspects of the Agreement contingent upon Final Approval by the Court.  Absent Final Approval, this Agreement shall be void and of no effect.

21. <u>Choice of Law</u>

This Agreement is to be interpreted pursuant to the laws of Connecticut, without regard to Connecticut's choice of law provisions.

22. <u>Counterparts</u>

This Agreement may be executed in counterparts, and each counterpart shall be deemed an original, and when taken together, will constitute one Agreement, which will be binding and effective as to all Parties.  Each counterpart of this Agreement may be executed in original, faxed, or electronic form, provided that it is duly executed.

23. <u>Retention of Jurisdiction</u>

The Parties shall request that the Court retain jurisdiction with respect to the interpretation, implementation, and enforcement of this Agreement, and the Parties submit to the jurisdiction of the Court for said purposes.

24. <u>Voluntary and Knowing Agreement</u>

Lassen and the Opt-In Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge and understanding of its terms and significance.  Lassen and the Opt-In Plaintiffs further agree that none of them have been coerced, threatened, or intimidated into signing this Agreement; that they have been advised to consult with an attorney; and that each of them in fact

has consulted with an attorney before signing this Agreement.  Plaintiffs' Counsel represent that they have conducted a thorough investigation into the facts of the Lawsuit and have diligently pursued an investigation of the claims that were or could have been asserted against Defendants.  Based on Plaintiffs' Counsel's independent investigation and evaluation, they are of the opinion that the settlement and this Agreement are fair, adequate, represent a reasonable compromise of bona fide disputes, and in the best interests of Lassen, the Opt-In Plaintiffs, and the CMWA Class, in light of all known facts and circumstances, including the risks of significant delay and defenses asserted by Defendants.

*Remainder Of Page Left Intentionally Blank*

AGREED TO BY

Roger Lassen, Jr., on behalf of himself
and all others similarly situated,

Date: 3-17-17

Hoyt Livery, Inc.

By: _____

Title: _____

Date: _____


Plaintiffs' Counsel, The Hayber Law
Firm, LLC

Date: 3-17-2017

Santo Silvestro

_____

Date: _____


Lynda Silvestro

_____

Date: _____

AGREED TO BY

Roger Lassen, Jr., on behalf of himself
and all others similarly situated,

_____

Date: _____

Hoyt Livery, Inc.

By: _____ Santo Silvestro _____

Title: _____ Pres _____

Date: _____ 3-17-17 _____

Plaintiffs' Counsel, The Hayber Law
Firm, LLC

_____

Date: _____

Santo Silvestro

_____

Date: _____ 3-17-17 _____

Lynda Silvestro

_____

Date: _____ 3/19/17 _____

Jeffrey Capone

Date: 3/16/17

AGREED TO BY

Lindell Mann

Date:   3/13/2017

AGREED TO BY

Dickson Mathon

_DMathon_____

Date:   _3 / 13 / 2017_____

AGREED TO BY

Kevin Mauricin

Date:   3/16/17

AGREED TO BY

Murphy Pierce

_Murphy Pierce_

Date: _3/13/17_

AGREED TO BY

Albert Profeta

Date: 3/10/17

AGREED TO BY

Kevin Reid

_____

Date: _____3/16/17_____

Kapil Verma

Date: _____8 |10 |17_____

AGREED TO BY

Ali Yahya

_____

Date:   03/16/2017
_____

**<u>SCHEDULE A</u>**

| Name | # of Weeks Worked | Amount Due |
|---|---|---|
| Roger Lassen, Jr. | 133 | $18,732.40 |
| Jeffrey Capone | 146 | $20,563.39 |
| Lindell Mann | 164 | $23,098.52 |
| Dickson Mathon | 44 | $6,197.19 |
| Kevin Mauricin | 59 | $8,309.87 |
| Murphy Pierce | 75 | $10,563.39 |
| Albert Profeta | 145 | $20,422.54 |
| Kevin Reid | 42 | $5,915.50 |
| Kapil Verma | 12 | $1,690.15 |
| Ali Yahya | 32 | $4,507.05 |

## SCHEDULE B

| Name | # of Weeks Worked | Amount Due |
|------|-------------------|------------|
| Toufiq Abicha | 2 | $166.39 |
| Ahmed Badr | 14 | $1168.24 |
| Mario Blas | 9 | $750.8 |
| Carlos Borja | 65 | $5426.13 |
| Gerald Burke | 39 | $3,255.44 |
| Jorge Cardona | 28 | $2,337.07 |
| Luis Chavez | 10 | $834.29 |
| Wilfred Constant | 122 | $10,184.94 |
| Keith Cook | 122 | $10,184.94 |
| Juan Cortes | 29 | $2,420.56 |
| Jimmy Dominguez | 28 | $2,337.07 |
| Raudel Dominguez | 118 | $9,850.99 |
| Charles Eaton | 5 | $416.85 |
| Marc Ferrante | 12 | $1,001.27 |
| David Lagomarsino | 27 | $2,253.58 |
| Alton LeBlanc | 45 | $3,756.37 |
| Nicodeme Ludger | 19 | $1,585.68 |
| Abner Maignan | 40 | $3,358.93 |
| Keaon Major | 94 | $7,847.27 |
| Jean Menard | 53 | $4,424.27 |
| Ty Middleton | 16 | $1,335.22 |
| Kerri Nashe | 31 | $2,587.54 |
| Michael Paulovic | 20 | $1,669.17 |
| Kim Pierce | 19 | $1,585.68 |
| David Ruskay | 13 | $1,084.75 |
| Francisco Sanchez | 122 | $10,184.94 |
| Omar Sevilla | 14 | $1,168.24 |
| Tom Sikiotis | 57 | $4,758.22 |
| Dion Stanfield | 110 | $9,183.09 |
| Michael Tjader | 23 | $1,919.64 |
| Igli Tuga | 78 | $6,511.48 |
| Walton Upchurch | 86 | $7,179.38 |
| Dennis Wilson | 53 | $4,424.28 |
| Zakaria Zakaria | 94 | $7,847.29 |