UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROGER LASSEN JR., individually and on behalf of all other similarly situated individuals,

v.

HOYT LIVERY, INC., *et. al.*,

No. 3:13-cv-1529 (VAB)

**RULING AND ORDER REGARDING MOTION TO ENFORCE SETTLEMENT**

Roger Lassen, Jr. ("Plaintiff"), on behalf of himself and others similarly situated, brought this action against Hoyt Livery, Inc. ("Hoyt Livery"), Santo Silvestro, and Lynda Silvestro (collectively "Defendants"), asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31 to 58 et seq. ("CMWA"). On March 16, 2018, after conducting a Final Approval Hearing, the Court approved the settlement of this case.

Mr. Lassen now seeks to enforce the settlement agreement and attorney's fees for overdue payment.

For the following reasons, the Court finds the motion to enforce the settlement agreement is **MOOT** and **DENIES** the motion for a judgment and the awarding of penalties under the settlement agreement but **GRANTS** Plaintiffs' motion for attorney's fees in the amount of **$5,236.25**, payable by **December 31, 2018,** because of the additional litigation necessitated to ensure the fulfillment of the settlement agreement's terms.

1

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For nearly three years, Mr. Lassen worked as a limousine driver for Hoyt Livery, a Connecticut company owned by Mr. Silvestro and Ms. Silvestro. Hoyt Livery paid all drivers, including Mr. Lassen, with a commission-based system. Under the system, a dispatcher assigned drivers to work trips requested by customers, and the assigned driver earned forty percent of whatever fee Hoyt charged the customer for the requested trip. The forty percent figure included two components: commission comprised twenty-five percent, while built-in gratuity comprised fifteen percent. Hoyt Livery required full-time drivers to be available six days a week.

Until July 2013, Hoyt Livery did not keep hourly time records for its drivers. During the period relevant to this lawsuit, Hoyt Livery drivers did not receive additional compensation if they worked more than forty hours in a week. Regardless of how many hours a driver worked in a week or how many trips a driver took, all drivers earned the same forty percent commission per trip. Hoyt Livery has since changed their policy, and now pays drivers one and a half times their weekly commission when the driver works more than forty hours during that workweek. This case involved whether the earlier payment structure followed the FLSA, and the CMWA.

On September 17, 2014, the Court (Meyer, J.) granted Plaintiff's motion to certify conditionally a FLSA collective action and to certify a Rule 23 class action as to the CMWA claims, with a class consisting of "all persons who have worked for Defendant . . . as full time limousine drivers between October 18, 2011 and the date of final judgment in this matter" (the "CMWA Class"). *See* Certification Order at 1–2, 13, ECF No. 43. In addition to Mr. Lassen, nine other plaintiffs opted in to the FLSA collective action (collectively, the "Opt-In Plaintiffs"), while the CMWA Class consists of thirty-five total members. *See* Approval Br. at 3–4, ECF No. 193-1.

On March 22, 2017, Mr. Lassen filed an unopposed motion for preliminary approval of the class action settlement, ECF No. 193, which the Court granted in part and denied in part. ECF No. 201. The Court allowed the parties to send the proposed notice to CMWA Class members, using the notice procedures outlined in the settlement agreement. The Court, however, rejected two provisions of the settlement agreement related to the FLSA collective action and the Opt-In Plaintiffs, namely the (a) general release provision and (b) the confidentiality provision. The Court directed the parties to change those provisions of the settlement agreement, as further explained in the Court's June 5, 2017 Order.

On December 5, 2017, on consent, Plaintiffs' moved the Court to order the unconditional preliminary approval of the proposed class action settlement, as amended. ECF No. 238.

Satisfied with the general release provision, as amended, and the confidentiality provision, as amended, the Court granted this motion on December 6, 2017. ECF No. 204.

On February 15, 2018, the Court held a Final Approval Hearing. ECF No. 255.

On March 1, 2018, the Court approved the settlement terms in the Settlement and Release Agreement and the Amended Settlement and Release. Under the agreement, defendants agreed to pay a settlement fund of $670,000 to Plaintiffs and Plaintiff's Counsel, which represented:

    a. $120,000 to Mr. Lassen and the Opt-In Plaintiffs, consistent with Section 8(a) of the Settlement Agreement and Release, to be paid "[w]ithin thirty (30) days of Final Approval of the settlement, as defined by Section 1(k) of the Settlement Agreement and Release;

    b. $135,000 to the CMWA Class, consistent with Section 8(c) of the Settlement Agreement and Release, to be paid "[n]o later than June 1, 2018;

    c. an incentive award of $15,000 to Mr. Lassen as the representative plaintiff in this case, consistent with Section 8(a) of the Settlement Agreement and Release, to be paid "[w]ithin thirty (30) days of Final Approval of the settlement, as defined by Section 1(k) of the Settlement Agreement and Release; and

    a. an amount not to exceed $400,000 in attorneys' fees and costs to Plaintiffs' Counsel, $200,000 of the $400,000 attorneys' fees and costs, consistent with Section 8(a) of the Settlement Agreement and Release, to be paid "[w]ithin thirty (30) days of Final Approval of the settlement, as defined by Section 1(k) of the Settlement Agreement and Release.

The Court Order stated that the final terms shall become final thirty-five days after the later date of the Order or final judgment upon conclusion of any appeals.

## II. STANDARD OF REVIEW

Under Connecticut law, the enforceability of a settlement agreement is determined using general principles of contract law. *See Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005). "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 811 (1993); *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir. 1986) ("Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings").

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom, BBCO/PHD*, 497 F.3d 124 (2d Cir. 2007) (citing *Omega*, 432 F.3d at 443); *Brandt v. MIT Dev. Corp.*, 552 F. Supp. 2d 304, 319 (D. Conn. 2008). "A contract is binding if the parties have mutually assented to the terms, and where the terms of the agreement are 'clear and unambiguous'." *Omega*, 432 F.3d at 443 (citing *Audubon*, 225 Conn. at 811 (internal citations omitted)). With respect to whether mutual assent, "[t]he Connecticut Supreme Court has held that '[a] contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation.' Id. (quoting Klein v. Chatfield, 166 Conn. 76, 80 (1974)). "The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives of the parties, and (3) purposes which they sought to accomplish." Id. (citing Klein).

## III. DISCUSSION

### A. Enforcement of the Settlement Agreement

Under Connecticut law, "[a] settlement agreement, or accord, is a contract among the parties." *Ackerman v. Sobol Family P'ship, LLP*, 298 Conn. 495, 533 (2010). "Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to *avoid* a trial . . . To hold that a jury trial is a necessary predicate to enforcement of a settlement agreement would undermine the very purpose of the agreement." *Audubon*, 225 Conn. at 812 (emphasis in original).

"In Connecticut, a contract is binding if the parties mutually assent to its terms." *Omega*, 432 F.3d at 444. Because the enforceability of a settlement agreement is determined using general principles of contract law, the Court must determine the rights and obligations of the

5

parties. *See Montanez v. D & D Auto, LLC*, 2016 WL 1254199, at *15 (D. Conn. Mar. 29, 2016) ("Under Connecticut law, settlement agreements are generally not enforceable where there has been no final meeting of the minds or where terms of the agreement remain disputed"): *see also Amica Mut. Ins. Co. v. Welch Enter., Inc.*, 114 Conn. App. 290, 295 (2009) ("Only when the terms are clear and unambiguous can the court enforce the settlement agreement").

> In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction . . . . Where the language is unambiguous, we must give the contract effect according to its terms . . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter . . . . [A] contract is unambiguous when its language is clear and conveys a definite and precise intent . . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity . . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous . . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself . . . . [A]ny ambiguity in a contract must emanate from the language used by the parties . . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so . . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous.

*Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.* 300 Conn 254, 260–61 (2011) (quoting *Cantonbury Heights Condominium Ass'n, Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 734 (2005). "Where a contract term is ambiguous, the court may properly discern the intent of the parties as to the meaning of the contract by considering extrinsic evidence." *Censor v. ASC Tech. of Connecticut, LLC*, 900 F. Supp. 2d 181, 194 (D. Conn. 2012) (citing *United Illuminating Co. v. Wisvest—Connecticut, LLC*, 259 Conn. 665, 675 (2002)).

"The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." *Barnard v. Barnard*, 214 Conn. 99, 110

6

(1990). "Contract terms are considered ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997).

In dispute is whether $200,000 of the $400,000 in attorneys' fees became due on January 15, 2018, a date before court approval of the settlement under Section 8(b) of the Settlement Agreement. The parties failed to amend the Settlement Agreement to address this timing of the payment issue, even though the Court urged the parties to change the terms before the Court issued its final approval. The Court ordered Defendants to pay no more than $400,000 in attorneys' fees and costs to the Plaintiffs' Counsel. Of the $400,000, Defendants were to pay $200,000 within thirty days of Final Approval of the settlement under the plain language of Section 8(b) of the Settlement Agreement. Both parties have interpreted the due date for the other $200,000 payment differently.

Mr. Lassen argues that the Settlement Agreement set the payment date as January 15, 2018 in Section 8(b), and Section 8(d) converted the sum into a judgment that was untimely when Defendants failed to pay by that date or by the time of the entering of the Settlement Agreement. *See* ECF No. 256-1, at 7–8.

Mr. Lassen then argues that the Court should award post-judgment attorney's fees under the Fair Labor Standards Act, which authorizes attorney's fees and costs to prevailing plaintiffs. *See* 29 U.S.C. § 216(b). Mr. Lassen asserts that, while the Court encouraged the parties to amend the provisions of the Settlement Agreement, the parties never amended the agreement. So, under

7

the terms of the Settlement Agreement, the January 15, 2018 deadline in the Settlement Agreement must stand.

In response, Defendants argue that, while Connecticut law allows the Court to summarily enter judgment against a party that fails to comply with the settlement agreement, *see Audobon Parking Assocs Ltd. P'ship v. Barclay & Stubbs*, 225 Conn. 804, 811 (1993), the Court's power is limited to those situations where the terms are "clear and unambiguous." Here, the terms are not so.

Defendants contend that the Court urged the parties to address the January 15, 2018 due date, which already passed by the March 15, 2018 hearing. At the hearing, definitive dates were set for the class members, but attorneys were supposed to work out a date for the second payment to Hayber Law Firm, which the March 16 Order noted. The Defendants finally contend that "the second payment is due to the Hayber Law Firm six-month after the first payment was due, i.e. December 1, 2018." Defendants also state that Defendants "intend to pay the monies via overnight courier on November 29, 2018 so that they are received in advance of the December 1 'deadline' because December 1 is a Saturday.

The Court agrees that the January 15, 2018 date cannot operate as a deadline, resulting in the execution of a judgment, the day the Court approved the Settlement Agreement. As discussed further below, Defendants' proposed payment date of December 1, 2018 also cannot be supported by a plain reading of the Settlement Agreement's language.

Here, the settlement terms are ambiguous. While Mr. Lassen contends that the payment was due January 15, 2018, the Court did not approve the settlement until March 16, 2018. *See* ECF Nos. 256, 256-1. Under Mr. Lassen's interpretation of the contract, Defendants were already two months late on their payments on the date of settlement approval. That position

makes little sense. It would require the Court to interpret the settlement agreement as imposing a penalty for failure to do something before the settlement agreement took effect. *Cf. DiLeto v. County of Obstetrics and Gynecology Grp., P.C.*, 297 Conn. 105, 154 (2010) ("Our law recognizes that performance of a contract is excused when the thing to be done becomes impossible"), *abrogated on other grounds in Fairfield Merrittview Ltd. P'ship v. City of Norwalk*, 320 Conn. 535 (2016).

Connecticut law limits the ability of the court to bind the parties to the undisputed terms of the agreement. *Nanni v. Dino Corp.*, No. 29340, 2009 WL 2871363, at *2 (Conn. App. Sept. 15, 2009) ("Generally, a trial court has the inherent power to enforce summarily a settlement agreement as a matter of law only when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement. As a result, Connecticut law limits the court's authority in such a circumstance to enforcing the undisputed terms of the settlement agreement that are clearly and unambiguously before it, and the court has no discretion to impose terms that conflict with the agreement") (internal quotation marks and citations omitted). Here, the term in question is not undisputed, therefore, the parties cannot be bound to the purported January 15, 2018 deadline to the Hayber law firm.

Regardless of the Court's ability to bind the parties to the agreement, the issue is moot. As the parties agreed at the November 28, 2018 hearing, Defendants payed the disputed $200,000 in attorney's fees to the Hayber Law Firm on November 19, 2018. *See A.B. Dick Co. v. Marr*, 197 F.2d 498, 502 (2d Cir. 1952) ("Where by an act of the parties, or subsequent law, the existing controversy has come to an end, the case becomes moot and should be treated accordingly.") (quoting *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920)). For these reasons, the Court thus finds Mr. Lassen's motion to be moot.

### B. Attorney's Fees

According to 29 § 216(b), "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The Court has "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (internal quotation marks omitted); *see also Cabala v. Crowley*, 736 F.3d 226, 229 (2d Cir .2013) (noting that the Second Circuit "accord[s] substantial deference to a district court's fee determinations" (internal quotation marks omitted)).

Attorneys' fees are determined by reference to the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), which "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively," *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). In "asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services." *Arbor Hill*, 522 F.3d at 192.

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. Courts enjoy "considerable discretion" in this regard. *Id.* Further, the Supreme Court has held that the rate "prevailing in the community" must be for "similar services by lawyers of

10

reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

When analyzing the number of attorney work hours claimed by a plaintiff, courts in the Second Circuit must decide whether the time was "usefully and reasonably expended by counsel." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations omitted). Additionally, fee applicants must submit supporting documents that show contemporaneous records "specific, for each attorney," and with "the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)

To determine the hourly rate, courts should examine three factors: (1) the experience of the attorney, (2) the nature of the case as it relates to the reasonableness of the rate, *Parris v. Pappas*, 844 F. Supp. 2d 262, 266–67, and (3) the rates "prevailing in the community for similar services." *Sony Electronics, Inc. v. Soundview Techs., Inc*., 389 F. Supp. 2d 443, 447 (D. Conn. 2005).

Here, while the ambiguity of the language in the Settlement Agreement does not warrant awarding penalties and the conversion of the Settlement Agreement's terms into a judgment, the additional litigation necessary to ensure payment of the final $200,000 payment for attorney fees warrants the awarding of additional attorney's fees. The Court finds that there was no basis for Defendants claiming that they had six months from court approval of the Settlement Agreement to make this payment. Defendants' decision therefore complicated, indeed prolonged, a litigation that had been prolonged already. As a result, these incurred attorney's fees, to the extent reasonable, should be compensated.

11

Otherwise, there is no disincentive to ending this litigation. *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 208 (2d Cir. 2009) (finding "entitlement to fees and costs extends to this appeal").

Of course, although the delay resulted in additional litigation expenses, this Court does not and need not accept at face value that all attorney's fees expended on finalizing this case warranted an additional payment by Defendants. Mr. Radshaw seeks more than $8,000 in attorney's fees for the time spent resolving the outstanding issues in this court-approved settlement and related expenses.

A review of his affidavit and accompanying time records, however, reveal that not all of this time should be compensated. For example, while there was a delay in payment, there is nothing in this record to suggest that the efforts to execute a judgment, in the absence of clearer contractual language, was warranted. *See* Declaration of John J. Radshaw III, Invoice (seeking fees for drafting and serving writ of executions, motion for disclosure of assets and related service of process of subpoenas).[1]

With the deduction of time related to these matters and other time not sufficiently justified, given the limited scope of this issue, *Fox v. Vice*, 563 U.S. 826, 838 (2001) ("[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time")**,** the Court finds that Attorney Radshaw is owed $5,236.25 for 17.75 hours at $295 per hour.

---

[1] Because nearly all of Mr. Rashsaw's costs are related to the subpoenas, these costs also will not be compensated. The remaining cost relates to a transcript ordered of the March 15, 2018 approval hearing, which given the absence of clear language in the Settlement Agreement regarding the payment at issue, is not sufficiently related to the enforcement of the Settlement Agreement to warrant an award of such costs.

As a result, Mr. Lassen's motion for attorney's fees will be awarded attorney's fees for $5,236.25. To avoid any ambiguity about the date of this payment, Defendants must pay this amount by **December 31, 2018**.

## IV. CONCLUSION

For the previously stated reasons, the Court finds the motion to enforce the settlement agreement is **MOOT** and **DENIES** the motion for the execution of a judgment, but **GRANTS** attorney's fees for $5,236.25, payable by **December 31, 2018**.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of December 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE